OPINION OF THE COURT
Bellacosa, J.
Defendant’s essential argument attacks the judgment of conviction as having been secured in violation of his equal *353 protection rights because, as he asserts, the prosecution discriminatorily exercised its peremptory challenges to exclude two Latino persons from the jury that ultimately found him guilty of two counts each of attempted murder and criminal possession of a weapon (see, Batson v Kentucky, 476 US 79). Defendant, also a Latino, satisfied the Batson (476 US 79, supra) threshold predicate of discriminatory use of peremptory challenges by the prosecutor’s rejection of all the Latino prospective jurors.
The dispositive issue — circumscribed in this case by pertinent undisturbed factual findings — is whether the prosecution can be said to have failed to satisfy its burden, in turn, to come forward with a neutral explanation for its eschewal of those prospective jurors so as to refute the inference of purposeful discrimination. The two prospective jurors at issue, who were fluent in Spanish, indicated, according to the prosecutor’s articulated belief, that they would only try to respect as authoritative the official court interpreter’s translation of evidence given by Spanish-speaking witnesses. This prosecutorial assertion, sufficiently documented by the record and supported in the findings of the two lower courts, warrants our concluding that the prosecutor fulfilled his burden of coming forward with a satisfactory explanation that the peremptory strikes in this case were neutral and nondiscriminatory. We thus affirm the order of the Appellate Division which had affirmed the conviction.
The conviction, after a jury trial, arose out of a shooting in which defendant had attempted to kill his young woman friend and her mother as they left a restaurant in Brooklyn. During the incident, random shots from defendant’s gun struck and wounded two other patrons of the restaurant.
Prior to trial and after the voir dire examination of 63 jurors had been completed and nine jurors had been selected, defense counsel objected to the prosecutor’s use of peremptory challenges excusing four potential jurors with Latino surnames. Over the course of an extensive record colloquy, defense counsel objected repeatedly that the prosecutor had removed every Latino from the venire and moved for a mistrial.
The Assistant District Attorney responded that he had challenged two of the jurors, Munoz and Rivera, because each had a brother who had been prosecuted by the same District Attorney’s office and that in his opinion these jurors could not *354 be fair in their deliberations on the case. The prosecutor further explained that he had challenged the other two jurors, Mikus and Gonzalez — the only jurors pertinent to the disposition of the issue before us — because each had given him a basis to believe from words and actions that their Spanish language fluency might create difficulties in their accepting the official court interpreter’s translation of the testimony of the Spanish-speaking witnesses. Among selected expressions made during the colloquy, the prosecutor proffered this summary for the record: "assistant district attorney: Your Honor, my reason for rejecting the — these two jurors — I’m not certain as to whether they’re Hispanics. I didn’t notice how many Hispanics had been called to the panel, but my reason for rejecting these two is I feel very uncertain that they would he able to listen and follow the interpreter. * * * We talked to them for a long time; the Court talked to them, I talked to them. I believe that in their heart they will try to follow it, but I felt there was a great deal of uncertainty as to whether they could accept the interpreter as the final arbiter of what was said by each of the witnesses, especially where there were going to be Spanish-speaking witnesses, and I didn’t feel, when I asked them whether or not they could accept the interpreter’s translation of it, I didn’t feel that they could. They each looked away from me and said with some hesitancy that they would try, not that they could, but that they would try to follow the interpreter, and I feel that in a case where the interpreter will be for the main witnesses, they would have an undue impact on the jury. ” (Appellant’s appendix, at A-23 — A-24 [emphasis added]; see also, appellant’s appendix, at A-26— A-28, A-29). The trial court then denied defendant’s mistrial motion, stating: "the court: Therefore, he [Assistant District Attorney] didn’t make a challenge for cause based upon that, but he said the reason that he did in fact remove these jurors is because even though they said they could listen to what the interpreter said and not let their own evaluation of what the witness says be the answer that they would utilize, he said I have grave doubts, and that’s why I’m asking”. (Appendix, at A-32 [emphasis added].) The case was tried with no Latinos on the jury and defendant was convicted. The Appellate Division affirmed the judgment of conviction and a Judge of this court granted leave to appeal.
New York’s Criminal Procedure Law provides a method for both the prosecution and defense counsel to challenge for cause the selection of a potential juror if it can be shown that *355 bias may prevent that juror from deciding the case impartially (CPL 270.20). Additionally, a limited number of peremptory challenges — because counsel may intuit a bias that is not documentarily demonstrable sufficient for a challenge for cause — are allowed to exclude jurors usually without any explanation (CPL 270.25).
The 1986 rule in Batson v Kentucky (476 US 79, supra) added restrictions to the exercise by prosecutors of their peremptory challenges against members of a defendant’s racial class. It abandoned the prosecutorially weighted evidentiary tilt of Swain v Alabama (380 US 202) and imposed a new and important calculus. To succeed initially in erecting the presumption of purposeful discrimination, the defendant must demonstrate (1) membership in a "cognizable racial group”; (2) the exercise of peremptory challenges by the prosecutor to exclude members of the defendant’s group; and (3) "facts and any other relevant circumstances rais[ing] an inference” of a discriminatory purpose (Batson v Kentucky, supra, at 96).
At that point the burden shifts to the prosecution to come forward and overcome the attribution and inference of purposeful discrimination with an articulable neutral explanation for having excused those jurors. The prosecutor’s explanation need not rise to the level for sustaining a challenge for cause. On the other hand, the prosecutor cannot simply state that rejecting the jurors rested on the assumption they might be favorably disposed to the defendant because of shared race or ethnic similarities. While the prosecutor has this burden of coming forward, "the ultimate burden of persuasion” must be carried by the person alleging the intentional discrimination (Batson v Kentucky, supra, at 94, n 18). By these respective weights, Batson calibrates the test and burdens while supplying a potent and appropriate remedy against invidious petit jury discrimination.
In People v Scott (70 NY2d 420), we applied the Batson rule retroactively under Griffith v Kentucky (479 US 314). Defendant, a black woman, was charged with murdering and robbing a white man. There were five black prospective jurors in the venire and the prosecutor excused them all peremptorily. We held that the prosecutor’s " 'pattern’ of strikes” gave rise to an inference of discrimination satisfying defendant’s lighter burden (People v Scott, supra, at 425-426). We reversed without having to address in that case the issue of what constitutes a neutral explanation under Batson.
*356 Here, no one challenges the triggering of Batson’s threshold. The exercise of prosecutorial peremptory challenges to exclude the only Latino jurors in the prosecution of a Latino defendant is enough (Batson v Kentucky, 476 US, supra, at 96-97; People v Scott, 70 NY2d 420, supra). The only new issue, circumscribed here by pertinent undisturbed factual findings, is whether the prosecution responded with a satisfactory nondiscriminatory explanation for excluding the only Latino jurors. Defendant contends as a matter of law that the burden has not been met because the Latino origins and the Spanish language are so inextricably intertwined that an exclusion of Latinos on the basis of language is inescapably, almost irrefutably, an exclusion on forbidden ethnic or racial grounds.
These jurors, however, were challenged because they indicated their knowledge of the Spanish language might interfere with their sworn responsibility as jurors to accept the official translation of the Spanish-proffered testimony. So it cannot be, as defendant has posed it and as the dissenting opinion would conclude, that the isolated language-ethnic identity factor alone determines this case.
Rather, the prosecutor’s belief was that the two Spanish-speaking jurors might be unable or unwilling to accept the evidence properly submitted to them by the court. That is a legitimate neutral ground for exercising a peremptory challenge, and it was for the trial court to determine if the prosecutor’s explanation was pretextual or real and justified by the answers and conduct of the two jurors during voir dire. Indeed, the Supreme Court itself recognized that resolution of these issues springing from the Batson test were rightly reposed in fact-finding courts entitled to “great deference” with customary appellate oversight (Batson v Kentucky, 476 US, supra, at 97-98, n 21). That reasonable minds could disagree at this level of review on this record demonstrates the wisdom and propriety of the Supreme Court’s and our view that, in the distribution of judicial functions among courts, deference generally to the fact-finding and evidence-viewing court is warranted in these circumstances. The trial court accepted the prosecutor’s explanation, as did the Appellate Division, and we have no basis in law or policy to conclude that those courts erred in these essentially factual determinations.
Indeed, the prosecution documented its belief on the jurors’ statements and on doubt-raising body language descriptions *357 (e.g., averted eyes and gazes on being questioned on the critical points) developed during an extensive voir dire and placed on the record before the Trial Justice, who was also present at the entire voir dire. The record-based beliefs, advanced to satisfy its Soison-based burden, do not appear to us as a matter of law and did not appear to the lower courts as a matter of fact to be some facial facade. If the court was not satisfied with the adequacy of this explanation after watching and listening to the proceedings, of course it could have conducted a further voir dire; but under the circumstances presented here, that was a matter within the trial court’s discretion.
The burden, moreover, does not require the prosecution, as the dissenting opinion would, to come forward with reasons rising, in effect and function, to a sustainable challenge for cause, for that would extend Batson and Scott, not apply them. Justice Powell’s opinion for the Supreme Court in Batson is the primary source of guidance and development, and it is carefully modulated to require that the prosecution must show only a neutral record-based belief for exercising a now properly circumscribed statutory right of peremptory excusal of jurors. To bear a proper and balanced burden of coming forward with a neutral explanation of a peremptory excusal of a juror is one thing; to create a new, higher burden of disproving, under "enhanced scrutiny” and the "inherently suspect” classification, a subjective, even "unconscious,” state of mind is quite something else. This would be practically and legally speaking an impossible and ultimate burden of proof, not the lesser burden of coming forward with a justifiable explanation. Indeed, this rule would not just circumscribe the exercise of a peremptory challenge by the People; it would change its very nature because the People would have to prove cause for removal as to the juror and absolute purity as to themselves.
In sum, we view quite straightforwardly the essence of this case as being really about a prosecutor’s court-accepted explanation concerning the ability of these jurors — or any sworn jurors no matter their race or ethnic similarities — to decide a case on the official evidence before them, not on their own personal expertise or language proficiency (compare, People v Legister, 75 NY2d 832). Hesitancy or uncertainty about being able to decide the case on the same evidence which binds every member of a jury is a proper, neutral and nondiscriminatory basis for the prosecutorial exercise of peremptory *358 challenges. The findings here of a legitimately articulated reason rooted in principles of jury selection, responsibility and function are valid and supportable in this record.
It is important to emphasize, however, that pretextual maneuvering or less verifiable manifestations of jurors’ attitudes about adhering to governing instructions will not satisfy the prosecution’s burden. Thus, our holding in no way diminishes the apodictic policy and precedents at issue, which we unequivocally reaffirm.
Our analysis of the record and issues of this case on the merits would produce the same result under the Federal and State equal protection right, as no justification for breaking new ground as to this clause by differentiating between this dually protected constitutional right is sufficiently advanced (see, Under 21 v City of New York, 65 NY2d 344, 360; Matter of Esler v Walters, 56 NY2d 306, 313-314).
Defendant’s remaining contentions of evidentiary trial errors involving impeachment, bolstering and cross-examination are unavailing, because in the circumstances of this case these matters were within the range of the trial court’s discretion.
There being no equal protection violation or any other error warranting disturbing the actions of the courts below, the order of the Appellate Division should be affirmed.