THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v
TERRANCE D. DUNCAN, Appellant.

Fourth Department, March 13, 1992

**APPEARANCES OF COUNSEL**

*Linda S. Reynolds (Chrysanthe Vergos* of counsel), for appellant.

*Kevin M. Dillon, District Attorney (Donna Milling* of counsel), for respondent.

## OPINION OF THE COURT

BALIO, J.

Defendant appeals from his conviction for manslaughter in the second degree and criminal possession of a weapon in the second degree, stemming from the shooting death of Shawn Stokes in a restaurant in the City of Buffalo. His principal contention on appeal is that the prosecutor's exercise of peremptory challenges to exclude two Black prospective jurors violated his constitutional right to equal protection of the laws *(see,* US Const, 14th Amend, § 1; NY Const, art I, § 11; *Batson v Kentucky,* 476 US 79; *People v Hernandez,* 75 NY2d 350, *affd* 500 US —, 111 S Ct 1859). Specifically, defendant asserts that the explanations proffered by the prosecutor were not race neutral, and that the explanations were pretextual, speculative and insufficient to rebut his prima facie showing of discrimination.

## I

During the first morning of jury selection, three Blacks were drawn and questioned by the court and counsel. After the first round of challenges, a Black male was excused for cause, and the two remaining Blacks, both women, were peremptorily excused. Defense counsel immediately requested "that the Court, pursuant to the *Batson* case, conduct a hearing to determine whether those exercises of challenge were racially motivated." The prosecutor then volunteered an explanation for exercising peremptory challenges with respect to the two Black women. The prosecutor observed that, following a recess, one of the women failed to return to the courtroom at the time previously set by the court and announced to the prospective jurors; that the woman apparently took it upon herself to take a lunch break, thereby delaying the proceedings until she returned; and that the character of the woman's answers gave the appearance that she was "feisty, independent, opinionated and too much of a leader." The prosecutor expressed concern that the woman would attempt to control the deliberative process and that her failure to attend the court proceedings in a prompt and timely fashion reflected adversely on her ability to perform as a juror.

The other Black woman was a single mother who was employed as a monitor technician at Buffalo General Hospital. The prosecutor noted that he had talked with a close friend who was employed as the prospective juror's supervisor at the hospital and that he also had had occasion to talk with other coordinators at the hospital. In light of those conversations, the prosecutor stated: "I'm aware that people who work as nurses' aides at Buffalo General, a lot of them have a lot of different problems in terms of work ethic, honesty, et cetera." Although he didn't know this woman specifically, the prosecutor observed that she "fits sort of that profile * * *; [that] she sits and watches a screen all day long to see if anybody's heart blips * * *; [that] there were qualities that I interpreted from her type of job that led me to believe that she is sort of easily satisfied and not real concerned with what she does on a day-to-day basis in the workplace, and I didn't want those qualities carried over into her service as a juror in a criminal case * * *; [and that] she falls into that larger group of nurses' aides and various hospital technicians that really don't give a damn."

The trial court denied defendant's motion, noting that the first woman did experience trouble following instructions and that the prosecutor's other explanations appeared to be "rationally [sic] neutral". Defendant did not except to the court's ruling nor did he move for a mistrial.

## II

The People initially contend that, because defense counsel did not except to, or otherwise protest, the court's ruling, defendant has failed to preserve for appellate review his challenge to the sufficiency of the prosecutor's explanations. We disagree.

CPL 470.05 (2) provides: "For purposes of appeal, a question of law with respect to a ruling or instruction of a criminal court during a trial or proceeding is presented when a protest thereto was registered, by the party claiming error, at the time of such ruling or instruction or at any subsequent time when the court had an opportunity of effectively changing the same. Such protest need not be in the form of an 'exception' but is sufficient if the party made his position with respect to the ruling or instruction known to the court, or if in response to a protest by a party, the court expressly decided the question raised on appeal. In addition, a party who without

success has either expressly or impliedly sought or requested a particular ruling or instruction, is deemed to have thereby protested the court's ultimate disposition of the matter or failure to rule or instruct accordingly sufficiently to raise a question of law with respect to such disposition or failure regardless of whether any actual protest thereto was registered."

That subdivision " 'dispenses with the necessity of an "exception" and provides that any protest of error clearly indicating the appellant's position is sufficient to present a "question of law" for appeal purposes' " (Bellacosa, Practice Commentary, McKinney's Cons Laws of NY, Book 11A, CPL 470.05, at 73, quoting Denzer, Practice Commentary, McKinney's Cons Laws of NY, Book 11A, CPL 470.05 [1971 ed]). Further, a question of law is preserved if the point was expressly decided by the trial court in response to a protest even though the protesting party overlooked the specific issue when making the protest (see, Preiser, Supp Practice Commentaries, McKinney's Cons Laws of NY, Book 11A, CPL 470.05, 1992 Pocket Part, at 8). In the instant case, defendant expressly protested the prosecutor's exercise of peremptory challenges in a racially discriminatory manner and moved for a *Batson* hearing. After hearing the prosecutor's explanations, the court expressly determined that the prosecutor offered race-neutral reasons for exercising the two peremptory challenges at issue. Defendant's protest was sufficient to preserve the issue of sufficiency of the prosecutor's explanations as a question of law for appellate review (see, CPL 470.05 [2]; *White v Jones*, 636 F Supp 772, 775-776, n 4; *see also, Ford v Georgia*, 498 US —, 111 S Ct 850; *State v Jones*, 293 SC 54, 358 SE2d 701 *[Batson* issue preserved by motion for hearing before jury is sworn]).

Where, as here, a defendant has objected timely to the prosecutor's exercise of peremptory challenges and has moved for a hearing, there is no need for defendant to reiterate an exception or to move for a mistrial after the court's ruling on the sufficiency of the prosecutor's explanation. Although a defendant bears the ultimate burden of proving purposeful discrimination, a defendant who has established a prima facie case of discrimination has no obligation to controvert or submit further proof with respect to the explanations advanced by the prosecutor (see, *United States v Davis*, 809 F2d 1194, 1202, *cert denied* 483 US 1007, 1008; *but see, People v Steans*, 174 AD2d 582, *lv denied* 78 NY2d 1015; *People v*

*Manigo,* 165 AD2d 660). A defendant's post-explanation silence does not signal agreement with the prosecution nor does it amount to a concession that the explanations are legally sufficient. Once the prosecutor has proffered explanations, it is the Trial Judge's duty to determine the sufficiency of those explanations. In those instances where the explanations are legally insufficient, a defendant is entitled to a new trial *(see, People v Mitchell,* 145 AD2d 967). Moreover, whether a defendant has controverted the prosecutor's explanation or has, following the prosecutor's explanations, advanced additional argument or presented additional evidence is a burden of proof question, not a preservation question. The preservation of an issue for appellate review is completely distinct from the question whether defendant has sustained his burden of proof.

We do not suggest that every *Batson* objection or protest preserves for review all *Batson* issues apparent from the record. Clearly, it preserves those issues expressly determined by the court *(see,* CPL 470.05 [2]; Preiser, Supp Practice Commentaries, *op. cit.).* It would not, however, preserve an issue where the defendant did not object to the challenge of a specific juror and where the prosecutor proffered an explanation for some, but not all, of the jurors peremptorily excused. In such a case, the objection or protest would preserve a question of law only with respect to the sufficiency of the explanations given and expressly determined by the court. A further objection or protest calling attention to the prosecutor's failure to proffer race-neutral reasons for other peremptory challenges would be required to enable the court to cure the prosecutor's omission *(see, United States v Forbes,* 816 F2d 1006). Moreover, a defendant could not raise, for the first time on appeal, a specific issue not raised by timely protest at the time of jury selection.

In the instant case, defendant protested two specific peremptory challenges, the prosecutor offered explanations for exercising those challenges, and the court ruled on the sufficiency of the prosecutor's explanation. Because the court expressly decided that the prosecutor's explanations were race neutral, the sufficiency of the prosecutor's explanation was preserved for appellate review.

<u>III</u>

After defendant moved for a hearing, the prosecutor immediately volunteered explanations for his exercise of peremp-

tory challenges. As a result, the trial court did not expressly determine that defendant established a prima facie case. The People contend that, because the voir dire was not recorded, the record is inadequate for appellate review of that issue.

■ In our view, the record reveals that defendant met his initial burden. Defendant is a Black man. The prosecutor, after excusing one Black person for cause, exercised peremptory challenges to remove the remaining two Black prospective jurors in the venire. That evidence satisfied defendant's initial burden to establish a prima facie case of discriminatory intent, thereby requiring the prosecutor to rebut the prima facie showing by proffering legitimate race-neutral reasons for his exercise of peremptory challenges (see, People v Hernandez, 75 NY2d 350, 356, supra; People v Scott, 70 NY2d 420, 425).

The prosecutor's reasons for the exercise of a peremptory challenge need not rise to the level justifying a challenge for cause (Batson v Kentucky, 476 US 79, 97, supra; People v Hernandez, 75 NY2d 350, 355, supra). The prosecutor cannot, however, rely upon a general assertion of good faith or a frivolous, arbitrary or whimsical excuse (see, Batson v Kentucky, supra, at 97-98; People v Hernandez, supra). The protection recognized in Batson would be rendered illusory by judicial acceptance of such facially neutral reasons as the lack of sensitivity necessary to realistically look at the issues (Batson v Kentucky, supra, at 106 [Marshall, J., concurring]). The prosecutor's explanation must be supported by legitimate race-neutral reasons, that is, reasons "rooted in principles of jury selection, responsibility and function" (People v Hernandez, supra, at 358) and must be "related to the particular case to be tried" (Batson v Kentucky, supra, at 98). "[P]retextual maneuvering or less verifiable manifestations of jurors' attitudes about adhering to governing instructions will not satisfy the prosecutor's burden" (People v Hernandez, supra, at 358).

■ This court has recognized as a legitimate race-neutral explanation, a prosecutor's concern about the attentiveness of a prospective juror as reflected by that person's tardiness during court proceedings (see, People v Burnett, 152 AD2d 910; see also, People v Merritt, 166 AD2d 912, lv denied 76 NY2d 988, cert denied — US —, 111 S Ct 2264) and a concern about the possibility that a prospective juror might be considered an expert on a particular matter or otherwise control the deliberative process (see, People v Merritt, supra; People v [Humberto] Soto, 163 AD2d 889, lv denied 76 NY2d 991; see also, People v Baysden, 128 AD2d 795, lv denied 70 NY2d 798). Moreover,

those concerns are recognized as principled bases for the peremptory exclusion of jurors *(see,* Gobert and Jordan, Jury Selection § 8.01 [2d ed]). The trial court's factual assessment of the prosecutor's motivation is entitled to great deference *(see, Hernandez v New York,* 500 US —, —, 111 S Ct 1859, 1869, *supra; People v Hernandez,* 75 NY2d 350, 356, *supra).* We therefore perceive no reason to disturb the trial court's finding that the prosecutor's exercise of a peremptory challenge to excuse one of the Black women was supported by a legitimate race-neutral explanation.

■ The explanation for excusing the other Black prospective juror was not, however, sufficient to rebut the inference of purposeful racial discrimination. The prosecutor identified the second Black woman as a monitor technician at a local hospital and classified all persons so employed as persons "easily satisfied", "not real concerned with what she does on a day-to-day basis" and persons "that really don't give a damn". The prosecutor suggested that he didn't want these qualities involved in jury service on a serious criminal case. The prosecutor articulated no basis for concluding that the prospective juror possessed these qualities or that she would be unable to perform diligently and attentively her jury responsibilities. More importantly, the prosecutor failed to articulate any observation (appearance, demeanor, response to questions) that would place the juror within the stereotype or profile.

A person's employment or lack of employment may, in an appropriate case, constitute a legitimate race-neutral reason for exclusion *(see,* Colbert, *Challenging the Challenge: Thirteenth Amendment as a Prohibition Against the Racial Use of Peremptory Challenges,* 76 Cornell L Rev 1, 97-98 [1990]; Serr and Maney, *Racism, Peremptory Challenges, and the Democratic Jury: The Jurisprudence of a Delicate Balance,* 79 J Crim L & Criminology 1, 45 [1988]). In *Williams v State* (507 NE2d 997, 999 [Ind App]), for example, the court approved the peremptory exclusion of a Black prospective juror in a rape case for the reason that, because of her employment as a social worker, the juror might have a liberal view of sexual behavior. In such case, the proffered reason was case specific, i.e., it was related to the factual circumstances of the case or a particular jury issue. In *State v Butler* (731 SW2d 265, 272 [Mo App]), however, the court rejected a prosecutor's explanation that nurses were compassionate and would be inclined to feel sorry for defendants, in part because that reason was not

case specific *(see also, Slappy v State,* 503 So 2d 350, 355 [Fla App], *affd* 522 So 2d 18 [Fla], *cert denied* 487 US 1219).

The prosecutor did not relate his concerns about the prospective juror's employment to the factual circumstances of the case. Although the crime charged was serious, the facts and legal issues were not complex, and the prosecutor gave no specific basis for concluding that the prospective juror would be unable to perform a juror's function in this case. In addition to the absence of any reason related specifically to the case, the proffered reason was grounded in a stereotype of dubious validity, and there is no evidence that the prospective juror possessed the qualities supposedly inherent in that stereotype. Such presumed group bias is not a legitimate basis for the exercise of a peremptory challenge *(see, State v Gilmore,* 103 NJ 508, 511 A2d 1150). To recognize the proffered explanation as valid and legitimate would, in our view, emasculate the constitutional protection recognized in *Batson (supra),* and we refuse to do so.

## IV

■ There is no merit to defendant's contention that the trial court erred in refusing to instruct the jury on the defense of justification. There was no reasonable view of the evidence to warrant such instruction *(see, People v Reynoso,* 73 NY2d 816). Defendant raised no objection to the jury verdict before the trial court, and therefore, failed to preserve for review his contention that the verdict was repugnant *(see,* CPL 470.05 [2]; *People v Satloff,* 56 NY2d 745; *People v Stahl,* 53 NY2d 1048).

PINE, J. (dissenting). We disagree with the majority's statement that defendant expressly protested the prosecutor's exercise of peremptory challenges in a racially discriminatory manner and moved for a *Batson (Batson v Kentucky,* 476 US 79) hearing. The sole reference in the record by defense counsel to that issue is as follows: "I'd like the record to show that the panel that was drawn for this part this morning had in it three black people. One of them was Hattie Adams; one of them was Kim Wells, and one of them was Dooley McCoy. No, Mr. Lee—Elmer Rice was the third. I'm sorry. After the first round of challenges, the prosecution struck the two black women, Hattie Adams and Kim Wells, from the jury. Mr. Rice was excused for cause because he knew the family of the deceased. But, based upon the prosecution's exercise of their challenges here on the two remaining black women, I am

requesting that the Court, pursuant to the Batson case, conduct a hearing to determine whether those exercises of challenge were racially motivated."

Defendant did not argue that the challenges were racially motivated. At most, defendant asked for a hearing to determine whether the prosecutor had a racial motivation. Following the prosecutor's explanation, the defense was silent. The court denied "the *Batson* motion," and defense counsel then requested a *Sandoval (People v Sandoval,* 34 NY2d 371) hearing.

Preservation rules provide notice to the trial court of potential error and an opportunity for the trial court to correct any error *(see,* Bellacosa, Practice Commentary, McKinney's Cons Laws of NY, Book 11A, CPL 470.05, at 74). The trial court in this case gave defendant a hearing, as requested. Defendant's silence after hearing the prosecutor's reasons could reasonably have been understood by the trial court as agreement that racially motivated reasons for striking potential jurors had not been shown.

More importantly, "[w]hile the prosecutor has [the] burden of coming forward, 'the ultimate burden of persuasion' must be carried by the person alleging the intentional discrimination *(Batson v Kentucky, supra,* at 94, n 18)" *(People v Hernandez,* 75 NY2d 350, 355, *affd* 500 US —, 111 S Ct 1859). Here, defendant has failed to satisfy his ultimate burden of proving a *Batson* violation. Defendant has done no more than note that two Black women had been peremptorily challenged. While the prosecutor's comments about the attitudes of nurses' aides and various hospital technicians may reflect stereotyped thinking at its most egregious, this record does not indicate the race of those employees, nor does it indicate that the prosecutor's thinking was influenced by racially motivated considerations.

DOERR, J. P., and GREEN, J., concur with BALIO, J.; PINE, J., dissents and votes to affirm in an opinion in which BOOMER, J., concurs.

Judgment reversed, on the law, and new trial granted on count two of the indictment; indictment otherwise dismissed without prejudice to the People to re-present any appropriate charges to another Grand Jury.