[627 NYS2d 614]

THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v ANIEL
RODRIGUEZ, Also Known as ANIBAL RODRIGUEZ, Appellant.

First Department, May 23, 1995

## APPEARANCES OF COUNSEL

*Risa Gerson* of counsel, New York City *(Philip L. Weinstein,* attorney), for appellant.

*Gina D'Angelica* of counsel, Bronx *(Billie Manning* on the brief; *Robert T. Johnson, District Attorney* of Bronx County, attorney), for respondent.

## OPINION OF THE COURT

ELLERIN, J. P.

At issue in this case is a *Batson* challenge asserted by defendant and the credibility of the "race-neutral" reasons offered by the prosecution.

While a qualitative analysis of the reasons offered in support of particular peremptory challenges involves a variety of subjective considerations, the validity of which are usually best left for determination by the Trial Judge who has had the benefit of actually observing the dynamics of the selection process, in this case the uncontroverted facts so strongly predominate against upholding the contested challenges as to require a reversal. We reach this conclusion reluctantly because the evidence here is sufficient as a matter of law to sustain the finding of defendant's guilt beyond a reasonable doubt of criminal sale of a controlled substance in the third degree and, upon an independent review of the facts, to find that the verdict is not against the weight of the evidence. *(People v Bleakley,* 69 NY2d 490.) However, if the principle enunciated in *Batson v Kentucky* (476 US 79), that peremptory challenges may not be exercised in a racially discriminatory manner, is to have any meaning it cannot be applied in a manner which blindly accepts any articulated reason or excuse, however implausible, that is offered and find it to be an appropriate nonpretextual, race-neutral explanation, as was done in this case.

In *Batson* it was made clear that the racially motivated exercise of peremptory challenges is constitutionally impermissible in denying equal protection to both the defendant

and the excluded juror and, additionally, that the harm from discriminatory jury selection touches the entire community by undermining public confidence in the fairness of our system of justice. *(Batson v Kentucky, supra,* at 87-88.)* It is in that setting that we must consider defendant's claim that his right to equal protection and due process were denied by the prosecutor's discriminatory use of peremptory challenges to exclude three Hispanic prospective jurors.

The *Batson* issue was initially raised in this case after the first round of jury selection. At that point the prosecutor moved for a hearing on the ground that the two defense counsels had, between them, used peremptory challenges to exclude all white males from the jury. In response, codefendant's counsel cross-moved on the ground, which was unrefuted by the prosecutor, that the prosecutor had used peremptory challenges to exclude the only two Hispanics in the pool, i.e., Santos Adorno, a school safety officer who had regular dealings with police officers, and Rafael Alvarez, a college-educated computer programmer, who also stated that he had friends and relatives in the police department. A hearing was held at that juncture, with the court finding that race-neutral reasons for all peremptory challenges had been presented by both sides. After the third round of jury selection, the prosecutor renewed his motion and codefendant's counsel did the same, based on the prosecutor's further use of a peremptory challenge to exclude Nelson Diaz, who was, according to the unrefuted statement of counsel, only the third Hispanic prospective juror who had come before them during jury selection. It was at this point that defendant's counsel joined in the renewed motion made on behalf of the codefendant and thereby sufficiently preserved defendant's present claim for review as a matter of law by this Court.

To establish a prima facie case of discrimination arising out of a prosecutor's use of peremptory challenges, a defendant must show, in the first instance, that the prosecutor exercised peremptory challenges to remove members of a cognizable protected racial group from the panel and that the facts are such as to create an inference that the prosecutor employed the challenges to accomplish a discriminatory purpose *(People v Childress,* 81 NY2d 263, 266; *People v Bolling,* 79 NY2d 317, 321; *People v Doran,* 195 AD2d 364). A discriminatory purpose sufficient to make out a prima facie case may be established by a pattern of strikes or questions and statements made during the voir dire *(see, Batson v Kentucky,* 476 US, *supra,* at

97; *People v Childress,* 81 NY2d, *supra,* at 267) or by showing that members of the cognizable group were excluded while others with the same relevant characteristics were not *(People v Childress, supra,* at 267; *see also, People v Bolling,* 79 NY2d, *supra,* at 324). The court may also take into account whether the prosecution has stricken members of the protected group who, because of their background and experience, might otherwise be expected to be favorably disposed to the prosecution *(People v Childress, supra,* at 267; *see also, People v Scott,* 70 NY2d 420, 425).

In this case, defendant, who is Hispanic, established that the prosecutor exercised peremptory challenges against three Hispanic prospective jurors of varying ages and educational backgrounds who were, according to the unrefuted statement of defense counsel at voir dire, the only Hispanics in the pool. While this, by itself, would have been sufficient to trigger a *Batson* hearing *(People v Hernandez,* 75 NY2d 350, 356, *affd* 500 US 352), it was also demonstrated that at least two of these jurors had disclosed fairly extensive contacts with police officers, a factor which is generally considered desirable for the prosecution. This showing clearly established a prima facie case of discriminatory purpose.

Once a defendant has made a prima facie showing, the burden shifts to the prosecution to provide race-neutral explanations for having excused the jurors *(Batson v Kentucky,* 476 US, *supra,* at 96-97; *People v Childress,* 81 NY2d, *supra,* at 266). The ultimate burden of persuasion on the issue of purposeful discrimination, however, remains with the party alleging the discrimination *(Purkett v Elem,* 514 US —, 131 L Ed 2d 834; *People v Hernandez,* 75 NY2d, *supra,* at 355).

A realistic review of the record in this case demonstrates that defendant satisfied his burden of establishing that adequate, credible explanations were not provided and that the record as a whole demonstrates purposeful discrimination. As to the first excluded prospective juror, Santos Adorno, the prosecutor initially alleged that his challenge was based on the fact that Mr. Adorno had regular contact with police officers. Since this background factor is one that would ordinarily be viewed as favorable to the prosecution rather than the defense, it may serve as a basis for an inference that the prosecutor's purpose in challenging such person was discriminatory *(see, People v Childress, supra,* at 267; *see also, People v Scott,* 70 NY2d, *supra,* at 425), but it can hardly serve as a credible race-neutral explanation. The prosecutor's belated

additional explanation that he also took into account the fact that Mr. Adorno's youth might prejudice him toward the defendants *(see, e.g., People v Manigo,* 165 AD2d 660) is equally difficult to credit. The prosecution, whose burden it was at that stage to come forward with evidence supporting its position, failed to establish Mr. Adorno's age for the record. In any event, neither of the defendants, one of whom was 46 years old and the other 26, was so young as to make him particularly likely to benefit from feelings of fellowship experienced by young jurors.

As to the second challenged prospective juror of Hispanic background, Rafael Alvarez, a college-educated computer programmer, the prosecutor offered only the explanation that he felt Mr. Alvarez's background would make him "too analytical of testimony". Not only does this conclusory answer fail to articulate why such an analytical approach would be a problem, but it is rendered particularly suspect by the fact that the prosecutor subsequently declined to challenge a white engineer who, like Mr. Alvarez, had friends and relatives in the police department. One of the significant factors to be considered in determining whether a race-neutral explanation is nonpretextual is whether it has been applied consistently to all prospective jurors, whether or not they are members of the protected group *(People v Rodney,* 192 AD2d 626; *see also, People v Childress, supra,* at 267; *People v Bolling, supra,* at 324). Clearly, the same criteria were not applied to Mr. Alvarez as to a similarly situated white juror.

During the third round of jury selection, the prosecutor exercised a peremptory challenge against prospective juror Nelson Diaz. During voir dire, Mr. Diaz had been asked by the Assistant District Attorney whether he would allow the fact that the defendants were "fellow human beings, allow that fact to have sympathy for them in this case?". Mr. Diaz replied, "Perhaps". Also, when asked by defense counsel what he would do if the People had not proved their case and the defense attorney had simply read a magazine or done the crossword puzzle, Diaz responded that he was not able to answer the question. Later, in the robing room, Diaz explained that he had been nervous when asked these questions, that he would be able to follow the court's instructions without considering sympathy or prejudice, and that he understood the People's burden of proof. When the prosecutor's challenge for cause was thereupon denied, he exercised a peremptory challenge to exclude Diaz from the jury, stating that, although

Diaz had "more or less cleared up the questions presented earlier" he continued to feel that Diaz did not understand that sympathy could not play a factor in deliberations and that the burden of proof is on the People. Additionally, the prosecutor stated that he felt that Diaz's educational background contributed to his belief that Diaz did not have the intelligence and capability to understand the issues. Diaz in fact had a high school diploma, and the prosecutor did not challenge one white juror who had a high school education or one who had not gone past the seventh grade.

While taking into account that the prosecutor's burden is merely to provide an articulable, race-neutral explanation and not provide the kind of basis necessary to sustain a challenge for cause (*Purkett v Elem, supra; People v Hernandez,* 75 NY2d, *supra,* at 355), in this case, the prosecutor's admission that Diaz's robing room interview had cleared up the questions raised by his prior responses, casts serious doubt on whether those responses were the true explanation for his challenge. Moreover, it must be noted that the original questions, as posed by the Assistant District Attorney as well as defense counsel, were in fact not very clear. As to the first question, Diaz was merely asked if he might feel sympathy for the defendants, not if he would be able to exclude it from his deliberations. As to the second question, not only was it not clearly stated, but Diaz's response indicated, at most, that he was biased in favor of the prosecution. Furthermore, Diaz's failure to attain more than a high school education can hardly be seen as a basis for excluding him when two other non-Hispanic jurors, with the same or less education, were seated without protest (*People v Rodney,* 192 AD2d 626, *supra; see also, People v Childress,* 81 NY2d, *supra,* at 267; *People v Bolling,* 79 NY2d, *supra,* at 324).

Based upon a realistic assessment and evaluation of the explanations presented by the prosecutor for challenging the only three prospective jurors of Hispanic background, particularly in the context of how similarly situated non-Hispanic prospective jurors fared, it must be found that the defendant satisfied his burden of demonstrating that the prosecutor failed to put forth credible race-neutral reasons for his peremptory challenges to these three Hispanic jurors. It must be noted that the prosecution's vehement objections, made below and on appeal, that the defense in this case was guilty of "reverse *Batson*" violations by deliberately using peremptory challenges to exclude white male jurors, cannot serve as an

excuse for the prosecution to counter with *Batson* violations of its own. A prosecutor faced with such a situation is entitled to move, as was done here, for a hearing at which the defense's reasons for its peremptory challenges may be explored for credible race-neutral explanations *(see, People v Kern,* 75 NY2d 638, *cert denied* 498 US 824; *see also, Georgia v McCollum,* 505 US 42). With respect to the issues raised on this appeal, however, the record leads to the inescapable conclusion that the jury selection process was fatally impaired by the prosecutor's discriminatory use of peremptory challenges in striking the specified Hispanic prospective jurors and that a new trial is required to redress the constitutional violations stemming from such improper discrimination.

Wherefore, the judgment of the Supreme Court, Bronx County (Joseph A. Mazur, J.), rendered April 12, 1993, convicting defendant, after a trial by jury, of criminal sale of a controlled substance in the third degree and imposing a sentence of six to twelve years in prison, should be reversed, on the law, and the matter remanded for a new trial.

KUPFERMAN, J. (dissenting). I would affirm. The only issue upon which we differ is the one rising from *Batson v Kentucky* (476 US 79).

I must confess that I do not have the psychic ability of the majority to read the minds of defense counsel and the Assistant District Attorney ex post facto in order to overrule the findings of the Trial Judge and determine that the peremptory challenges were pretextual *(see, Purkett v Elem,* 514 US —, 131 L Ed 2d 834).

ASCH and RUBIN, JJ., concur with ELLERIN, J. P.; KUPFERMAN, J., dissents in a separate opinion.

Judgment, Supreme Court, Bronx County, rendered April 12, 1993, reversed, on the law, and the matter remanded for a new trial.