■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v TERRY McNAIR, Appellant. [808 NYS2d 689]—

Judgment, Supreme Court, New York County (Ronald A. Zweibel, J.), rendered October 29, 2003, convicting defendant, after a jury trial, of criminal sale of a controlled substance in the third degree, and criminal possession of a controlled substance in the seventh degree, and sentencing him, as a second felony offender, to an aggregate term of 5 to 10 years, unanimously affirmed.

While the court should have provided limiting instructions at the time expert testimony was received regarding the practices of narcotics sellers (*People v Brown*, 97 NY2d 500, 506 [2002]), we find no basis for reversal (*see* CPL 470.05 [1]), since the court provided suitable instructions in its final jury charge and defendant is unable to demonstrate prejudice (*see People v Oguendo*, 305 AD2d 140 [2003], *lv denied* 100 NY2d 597 [2003]; *see also People v. Archibald*, 211 AD2d 451 [1995], *lv denied* 85 NY2d 935 [1995]).

The People made a sufficiently particularized showing to warrant closure of the courtroom to the public, except for defendant's family, during the testimony of the undercover officers. Each officer had several other cases pending in the courthouse, both had recently worked undercover in the same area where defendant was arrested and expected to resume undercover operations there in the near future, and both testified to taking specific precautions upon entering the courthouse to conceal their identities because they feared being recognized as police officers (*see People v Ramos*, 90 NY2d 490, 498-499 [1997], *cert denied sub nom. Ayala v New York*, 522 US 1002 [1997]; *People v Cardena*, 293 AD2d 355, 356 [2002], *lv denied* 98 NY2d 673 [2002]). The court also properly exercised its discretion in directing that the officers testify under their shield numbers. Defendant does not challenge the court's determination that the officers should testify anonymously, but only argues that instead of using shield numbers the officers should have used pseudonyms, as suggested by trial counsel. We reject this argument, since defendant's assertion that the use of shield numbers may have influenced the jury to believe that defendant was a dangerous person rests on speculation.

The court properly granted the People's *Batson* application (*Batson v Kentucky*, 476 US 79 [1986]; *People v Kern*, 75 NY2d 638 [1990], *cert denied* 498 US 824 [1990]). The record supports the court's finding of pretext with regard to the prospective jurors at issue. Such a finding, based primarily on the court's assessment of counsel's credibility, is entitled to great deference (*see People v Hernandez*, 75 NY2d 350 [1990], *affd* 500 US 352, 356-357 [1991]). Although defense counsel, who exercised 9 out of 10 of his peremptory challenges to exclude white panelists, claimed that his reason for striking the two panelists at issue was their prior jury service, he never questioned them about that factor, or anything else.

The court properly exercised its discretion in admitting rebuttal testimony that tended to refute defendant's version of events (*see People v Harris*, 57 NY2d 335, 345 [1982], *cert denied* 460

US 1047 [1983]; *People v Payne*, 235 AD2d 235 [1997], *lv denied* 89 NY2d 1039 [1997]). Even if some of the testimony was "not technically of a rebuttal nature," the court had discretion to allow it (CPL 260.30 [7]), and defendant was not unduly prejudiced. Concur—Tom, J.P., Friedman, Gonzalez, Sweeny and McGuire, JJ.