People v Teran (2019 NY Slip Op 03532)





People v Teran


2019 NY Slip Op 03532


Decided on May 7, 2019


Appellate Division, First Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on May 7, 2019

Renwick, J.P., Richter, Tom, Kahn, Moulton, JJ.


8534 3247/13

[*1]The People of the State of New York, Respondent,
v
Raymond Teran, Defendant-Appellant.


Law Office of Robert "Bob" Walters, Bronx (Robert "Bob" Walters of counsel), for appellant.
Cyrus R. Vance, Jr., District Attorney, New York (Lee M. Pollack, for respondent.



Judgment, Supreme Court, New York County (Michael R. Sonberg, J.), rendered January 28, 2016, as amended March 17, 2016, convicting defendant, after a jury trial, of two counts of criminal sale of a controlled substance in the third degree and seven counts of criminal sale of a controlled substance in the fifth degree, and sentencing him, as a second felony drug offender, to an aggregate term of seven years, affirmed.
The verdict was not against the weight of the evidence (see People v Danielson, 9 NY3d 342, 348 [2007]). There is no basis for disturbing the jury's credibility determinations. The evidence established that on some occasions defendant personally sold drugs, and it also supported a reasonable inference that he was accessorially liable for other sales (see Penal Law § 20.00). There was no requirement that the indictment contain any language about acting in concert, because "there is no legal distinction between liability as a principal or criminal culpability as an accomplice" (People v Rivera, 84 NY2d 766, 769 [1995]).
The court properly denied defendant's application pursuant to Batson v Kentucky (476 US 79 [1986]). The prosecutor exercised peremptory challenges against three African-American panelists who are the subject of the defendant's Batson claim, and two non-African-Americans, but not against a fourth African-American. The record supports the court's finding that the nondiscriminatory reasons provided by the prosecutor for the challenges in question were not pretextual. One panelist had previously served on a hung jury, which we have found to be a valid race-neutral reason for a peremptory challenge (People v Mitchell, 216 AD2d 156 [1st Dept 1995], lv denied 86 NY2d 798 [1995]). An additional non-pretextual explanation for challenging this panelist was the prosecutor's association of her service as a coordinator at a soup kitchen with possible associations with drug users, which raised a concern with the prosecutor that she might have harbored sympathy towards a defendant charged with drug offenses. Somewhat analogously, we previously have found the absence of a racial pretext for peremptory challenges premised on a panelist's social service orientation, which might lead the panelist to sympathize with someone in the defendant's position (People v Wint, 237 AD2d 195, 197 [1st Dept 1997], lv denied 89 NY2d 1103 [1997]). The second challenged panelist expressed reservations about accessorial liability indicating reluctance to find someone guilty unless he had directly sold drugs, a valid race-neutral basis in a case such as this. This panelist who, as a case manager for a community based organization, had worked with persons who were HIV-positive drug users, also supported the prosecutor's concern about sympathy for defendant (People v James, 282 AD2d 264 [1st Dept 2001], affd 99 NY2d 264 [2002]; People v Wint, 237 Ad2d at 197). The third Batson challenge pertained to a panelist who seemed unaware of the neighborhood where her mother lived, explained her disinterest as "I don't ask a lot of questions," and generally seemed disinterested in the entire process. We have previously found the absence of racial pretext in explanations for peremptory challenges that rest in the panelist's lack of interest (People v Artis, 262 AD2d 215 [1st Dept 1999], affd sub nom. People v Jeanty, 94 NY2d 507 [2000]; People v Valentine, 298 AD2d 126 [1st Dept 2002], lv denied 99 NY2d 586 [2003]) and in the demeanor [*2]presented during voir dire (People v Mohammed, 45 AD3d 251 [1st Dept 2007], conclusions that we also reach here. The trial court's findings in these regards are entitled to great deference (see People v Hernandez, 75 NY2d 350 [1990], affd 500 US 352 [1991]). Since each of the panelists at issue was challenged for a credible, race-neutral reason, the record does not warrant a finding of pretext in the prosecutor's exercise of peremptory challenges.
Defendant's arguments under Brady v Maryland (373 US 83 [1963]) are unavailing. The People made extensive and timely disclosures relating to civil cases filed against two police witnesses, and defendant had ample opportunity to use this material at trial but chose not to do so. Defendant's main complaint relates to a motion decision by a United States District Judge in one of the disclosed lawsuits, which defendant claims to have a bearing on the officer's credibility. Although the People did not disclose this particular decision, it was both a matter of public record and readily available to defendant by making an electronic search. Defendant's claim that additional lawsuits against the testifying officers came to light after defendant's trial is likewise outside the record before us.
All concur except Renwick, J.P. who concurs in a separate memorandum as follows:




RENWICK, J.P. (concurring)


I agree with the majority that the verdict was not against the weight of the evidence. I also agree that defendant's arguments under Brady v Maryland (373 US 83 [1963]) are unavailing. However, as to defendant's Batson claim, that the prosecutor challenged potential jurors because of their race, I am constrained to concur in the result reached by the majority.
Peremptory challenges enable litigants to remove otherwise qualified prospective jurors from the jury panel without any showing of cause; consequently, they have been historically exercised based on race. In Batson v Kentucky (476 US 79 [1986]), the Supreme Court tried to remedy the most obvious abuses by requiring that strike proponents give a "race neutral" reason for their strikes and directing trial courts to assess the credibility of the explanation. Whether Batson has proven successful in ending racial discrimination in jury selection and adequately safeguarding the rights of both defendants and the excluded jurors remains an open question. The facts of this case give reason to doubt.
Here, the record demonstrates, at best, that the challenges against two of the three African-American jurors, who were the subject of defendant's Batson claim, were the product of the prosecutor's questionable assumption that social service workers, who volunteer in soup kitchens and work in HIV clinics, and persons who satisfy their civic duty as jurors in trials resulting in hung juries, are unduly sympathetic to criminal defendants. The majority, as well as the trial court, finds that these putative employment and civic related challenges were rationally based and did not give rise to an inference of discrimination. Unfortunately, other courts have come to the same conclusion that these questionable reasons are "race-neutral," shifting the burden to a defendant to establish that these dubious reasons are pretextual (see e.g. People v Mitchell, 216 AD2d 156 [1st Dept 1995], lv denied 86 NY2d 798; People v Rodriguez, 211 AD2d 275, 279, appeal dismissed 88 NY2d 917 [1996]). Consequently, at this third step of the Batson inquiry, defendant failed to meet the very tough burden of demonstrating that the putative race-neutral reasons for challenging these three prospective jurors were pretextual.
When explanations are based on absurd and implausible stereotypes, they should be rejected as plainly unacceptable race-neutral explanations. For instance, in this case, one targeted group was people who work in soup kitchens. During jury selection, the assistant district attorney (ADA) explained to the court that peremptorily challenging "a coordinator in a soup kitchen" was legitimate because "usually people that are servers at soup kitchens are those that may be addicted to controlled substances." Apparently, realizing the absurdity of this invented stereotype, the appellate ADA now explains that what the trial ADA meant was that "as a coordinator at a soup kitchen, [the challenged black juror] might have extensive contact with people who were addicted to controlled substances." Still, this group stereotype based on mere speculation should be found to be inadequate rebuttal to a prima facie Batson case.
"[I]f the principle enunciated in Batson v Kentucky (476 US 79), that peremptory challenges may not be exercised in a racially discriminatory manner, is to have any meaning it cannot be applied in a manner which blindly accepts any articulated reason or excuse, however implausible . . ." (People v Rodriguez, 211 AD2d 275, 276 [1st Dept 1995]). Ultimately, given our precedents and because there were no obvious instances of
unchallenged, non-African-American jurors, with comparable social service and civic duty backgrounds, I am constrained to concur with the result reached by the majority.
THIS CONSTITUTES THE DECISION AND ORDER
OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: MAY 7, 2019
CLERK