Flanders JORDAN, Petitioner,

v.

Eugene S. LEFEVRE, Respondent.

No. 97 Civ. 7046 (MBM).

United States District Court,
S.D. New York.

Oct. 13, 1998.

Flanders Jordan, Malone, NY, pro se.

Ilisa T. Fleischer, Assistant District Attorney, New York City, for Respondent.

## OPINION AND ORDER

MUKASEY, District Judge.

Flanders Jordan petitions for a writ of habeas corpus, pursuant to 28 U.S.C. § 2254 (1994), challenging his state court conviction for manslaughter in the first degree, for which he received a sentence of 11 to 22 years imprisonment. Magistrate Judge Peck, to whom the petition was referred, recommended in a Report and Recommendation ("Report"), dated May 12, 1998, that the writ be denied and the petition dismissed, on both substantive and procedural grounds. Petitioner has submitted his Notice of Objection ("Objection") to the report, in which he objects to "each and every point" raised in the Report. (Obj. at 1) Petitioner contests the Report's application of *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), and asserts that the Report both failed to address petitioner's substantive rights correctly and failed to state disputed facts accurately. Petitioner did not, however, discuss the issue of procedural default. In addition, petitioner has filed a motion for the consideration of a mitigating factor in connection with his petition. For the reasons stated below, the Report is adopted, the writ is denied and the petition is dismissed. Petitioner's motion is also denied as untimely.

## I.

The relevant facts are set out in the Report and are summarized as follows. During jury selection, petitioner's defense counsel made a *Batson* application, asserting that five of the prosecutor's 10 peremptory challenges had been used discriminatorily to discharge prospective black jurors. In response, the prosecutor pointed out that two of the five prospective black jurors had been

excused for cause, and provided non-racial grounds for excluding the other three prospective jurors. The trial court denied petitioner's *Batson* application, finding that there were rational, non-racial reasons for the exclusion of the three jurors. (Voir Dire at 43–46)

During subsequent voir dire, defense counsel objected to another peremptory challenge of a prospective black juror. The prosecutor again provided a non-racial reason for exercising the peremptory challenge, which the trial court found to be a rational basis for exclusion. As a result, the trial court denied the *Batson* challenge. (*Id.* at 62–64) Later in the voir dire, the court itself questioned one of the prosecutor's peremptory challenges. Nevertheless, the court accepted the prosecutor's explanation that the woman in question "doesn't seem to have it all" and allowed the challenge to stand. (*Id.* at 130)

In his direct appeal to the Appellate Division, First Department, petitioner raised five grounds for relief: (1) The trial court's denial of his application for a hearing on whether there was probable cause for his arrest violated his due process rights because he was arrested over seven months after the crime and was not informed that his arrest was made on the basis of an anonymous tip until the eve of another hearing; (2) the prosecutor violated the Equal Protection Clause of the Fourteenth Amendment by exercising peremptory challenges discriminatorily against prospective black jurors, and the trial court ran afoul of *Batson* by not affording defense counsel the opportunity to contest the reasons offered for those challenges; (3) the trial court improperly commented to prospective jurors during voir dire concerning petitioner's right not to testify at trial; (4) the trial court abused its discretion in discharging two jurors whom petitioner wanted to retain while keeping two other jurors with travel plans; and (5) the trial court erroneously refused to give his requested accomplice charge. (Jordan 1st Dep't Br., dated July 11, 1997, at 14–41)

The First Department unanimously affirmed petitioner's conviction on March 11, 1997. *See People v. Jordan*, 237 A.D.2d 141, 654 N.Y.S.2d 141 (1997). Petitioner's coun-

sel, in a letter addressed to the New York Court of Appeals, then sought permission to appeal to that court. (Pet. 4/16/97 Letter to Ct.App.) The letter emphasized the *Batson* challenge, devoting three of four paragraphs to the issue. (*Id.* at 1, 2) In the concluding paragraph, the letter urged leave to appeal "[f]or all of these reasons and the reasons set forth in [petitioner's] Appellate Division briefs," and noted further that, "[i]n support of his application, Mr. Jordan relies on this letter and on briefs he filed in the Appellate Division, copies of which are enclosed." (*Id.* at 2) The Court of Appeals denied leave to appeal on May 8, 1997, without opinion. *See People v. Jordan,* 89 N.Y.2d 1095, 660 N.Y.S.2d 389, 682 N.E.2d 990 (1997).

Petitioner bases his current petition on four grounds: (1) his due process rights were violated when his application for a hearing on whether there was probable cause for his arrest was denied; (2) his rights under the Equal Protection Clause were violated when the prosecution used its peremptory challenges to exclude prospective black jurors in violation of *Batson;* (3) the trial court made improper comments during voir dire concerning petitioner's right not to testify; and (4) the trial court abused its discretion in discharging a sick juror and a juror with holiday plans.

## II.

In the Report, Magistrate Judge Peck concluded that petitioner's first, third and fourth grounds for collateral attack are procedurally barred. For the following reasons, I agree with his conclusion.

■ A district court reviewing a magistrate judge's report applies the standards in Fed.R.Civ.P. 72(b) and 28 U.S.C. § 636(b)(1) (1994), which permit the court to adopt those parts of the report to which no specific objection is raised, provided the findings are not clearly erroneous. *See Thomas v. Arn,* 474 U.S. 140, 149, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985). With respect to those parts of the report to which any party objects, the court must make a *de novo* determination. However, the court need not conduct a *de novo* evidentiary hearing. *See United States v. Raddatz,* 447 U.S. 667, 673–76, 100 S.Ct.

2406, 65 L.Ed.2d 424 (1980); *Grassia v. Scully,* 892 F.2d 16, 19 (2d Cir.1989). If neither party objects to the report, the court may adopt the recommendations of the magistrate judge, but is not obligated to do so. *See Grassia,* 892 F.2d at 19. As noted, in this case, petitioner objects to every recommendation in the Report. Accordingly, I must conduct a *de novo* review.

■ Before a federal court will hear a habeas corpus petition, a petitioner must first exhaust all available state remedies. *See* 28 U.S.C. § 2254(b)(1)(A) (1994). In the Second Circuit, "[t]he exhaustion requirement is not satisfied unless the federal claim has been 'fairly presented' to the highest court of the state." *Pesina v. Johnson,* 913 F.2d 53, 54 (2d Cir.1990) (per curiam); *see Daye v. Attorney General,* 696 F.2d 186, 191 (2d Cir. 1982). In addition, "a petitioner must inform the state court of all material factual allegations and legal premises of the claim." *Thebner v. Miller,* 788 F.Supp. 714, 717 (E.D.N.Y. 1992); *see Daye,* 696 F.2d at 191.

■ Section 500.10(a) of the New York Court of Appeals Rules of Practice specifies that applications for appeal from the Appellate Division "may be in letter form" and "should identify the issues on which the application is based." 22 N.Y.C.R.R. § 500.10(a) (Consol.1993). Additionally, the application must include a copy of the petitioner's appellate brief. *Id.* The Second Circuit has interpreted this requirement to mean that the application letter to the Court of Appeals must explicitly present each claim being asserted. *See Grey v. Hoke,* 933 F.2d 117, 120 (1991). The *Grey* Court declined "to presume that the New York Court of Appeals has 'a duty to look for a needle in a paper haystack.'" *Id.* at 120 (citation omitted). District courts in the Second Circuit accordingly have held that "[p]resentation requires more than a 'general reference' to the issues presented in an attached brief." *Marrero v. Keane,* 93 Civ. 3573, 1995 WL 66660, at *1 (S.D.N.Y. Feb.16, 1995); *Brooks v. Kelly,* 88 Civ. 0631, 1993 WL 350188, at *3 (W.D.N.Y. Sept.10, 1993); *Thebner v. Miller,* 788 F.Supp. 714, 717 (E.D.N.Y.1992).

There is a contrary line of cases from the Eastern District of New York. (*See* Report at 12 n.4) Most of these cases involved a failure to mention any issue in the letter of application other than a general reference to the attached appellate brief. In each case, the court held that the claims advanced in the appellate brief were properly presented. *See, e.g., Manning v. Artuz,* 94 Civ. 3325, 1996 WL 294359, at *4 (E.D.N.Y. May 29, 1996); *Meatley v. Artuz,* 886 F.Supp. 1009, 1014 (E.D.N.Y.1995); *Melendez v. Scully,* 91 Civ. 2497, 1993 WL 41769, at *4 (E.D.N.Y. Feb.10, 1993). These cases subvert *Grey,* and also rely on a case that antedates and was implicitly overruled by *Grey. See Coleman v. Warden,* 87 Civ. 8762, 1990 WL 130735, at *1 (S.D.N.Y. Sept.5, 1990). *Grey* controls on the issue of whether grounds for appeal were properly presented to the Court of Appeals.

■ A claim that is not properly presented in the application letter to the Court of Appeals is thereafter barred, as New York Court Rules of Practice § 500.10(a) permits only one application for appeal. 22 N.Y.C.R.R. § 500.10(a) (Consol.1993). Claims that are procedurally defaulted may be deemed exhausted for habeas corpus purposes. *See Bossett v. Walker,* 41 F.3d 825, 829 (2d Cir.1994). However, these defaulted claims are barred from habeas corpus review unless the petitioner can show good cause for the default external to himself and his legal representative, and prejudice resulting from the asserted claim. *See id.; see also Wainwright v. Sykes,* 433 U.S. 72, 87–90, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977).

■ In the current case, the application letter from petitioner's counsel to the Court of Appeals discussed only the second ground for collateral attack, the *Batson* challenge. Petitioner's counsel made only passing reference to the appellate briefs in the final paragraph of the application letter. (*See* Pet. 4/16/97 Letter to Ct.App. at 2). Under *Grey,* this passing reference, coupled with the letter's lengthy discussion of the *Batson* claim, does not fairly apprise the New York Court of Appeals of the three additional grounds. In order for this court to consider these claims, therefore, petitioner must show good cause for his counsel's failure to raise these grounds in the application letter, and resulting prejudice. *See Wainwright,* 433 U.S. at 90, 97 S.Ct. 2497. Petitioner has failed to do either. Accordingly, the Report correctly concludes that petitioner's first, third and fourth claims are procedurally barred from habeas corpus review.

## III.

■ Petitioner's second and only remaining ground for appeal is that the prosecution's exercise of peremptory challenges against prospective black jurors violated his rights under the Equal Protection Clause of the Fourteenth Amendment. *Batson* presents a three-part inquiry to be utilized in determining whether the exercise of peremptory challenges in criminal cases involves purposeful racial discrimination. First, the party opposing the peremptory challenge must make a prima facie showing that the peremptory challenge was exercised on the basis of race. *See Hernandez v. New York,* 500 U.S. 352, 358, 111 S.Ct. 1859, 114 L.Ed.2d 395 (1991); *Batson,* 476 U.S. at 96–97, 106 S.Ct. 1712. Second, assuming the requisite showing has been made, the burden shifts to the challenged party "to articulate a race-neutral explanation for striking the juror in question." *Hernandez,* 500 U.S. at 358, 111 S.Ct. 1859; *Batson,* 476 U.S. at 97–98, 106 S.Ct. 1712. This second step "does not demand an explanation that is persuasive, or even plausible," but merely requires that the reason not deny equal protection. *Purkett v. Elem,* 514 U.S. 765, 115 S.Ct. 1769, 1771, 131 L.Ed.2d 834 (1995). "Finally, the trial court must determine whether the [opposing party] has carried his burden of proving purposeful discrimination." *Hernandez,* 500 U.S. at 358, 111 S.Ct. 1859; *see Batson,* 476 U.S. at 98, 106 S.Ct. 1712.

The New York Court of Appeals has further held that the trial court must maintain a record of the basis of its ruling in the third step of the *Batson* inquiry so as to allow for meaningful appellate review. *People v. Payne,* 88 N.Y.2d 172, 183, 643 N.Y.S.2d 949, 956, 666 N.E.2d 542 (1996). A trial court may, however, issue a ruling promptly after step two of the *Batson* inquiry without fur-

ther discussion, so long as both sides have had an opportunity to make their respective showings. *See id.* at 184, 643 N.Y.S.2d 949, 666 N.E.2d 542, 643 N.Y.S.2d at 957, 666 N.E.2d 542. The trial court's determination of whether a party's "use of a peremptory challenge is motivated by discriminatory intent ... is a factual determination and thus qualifies for [a] presumption of correctness." *Bryant v. Speckard,* 131 F.3d 1076, 1077 (2d Cir.1997). Such a finding will not be overturned on appeal unless it is clearly erroneous. *See Brown v. Kelly,* 973 F.2d 116, 122 (2d Cir.1992).

In the current petition, the Magistrate Judge carefully reviewed the voir dire record of the five prospective jurors whom petitioner claims were excluded on the basis of race, and analyzed the prosecutor's explanations in light of current caselaw. These findings are detailed in the Report. (*See* Report at 19–24) The Magistrate Judge found no reason to overturn the trial court's findings that the prosecutor's exercise of his peremptory challenges were race-neutral. (*See* Report at 25–26)

Petitioner's blunderbuss objection to the Report notwithstanding, he appears to accept the Report's findings with regard to two prospective jurors. (*See* Obj. at 3–4 ("Except for the challenges of Mr. Atkinson and Mrs. Davis, the prosecutor failed to remotely relate the specific challenge of Mr. Taylor, Mrs. Beasley, and Mrs. Chatrain, to the particular murder case. that was about to be tried.")) Therefore, I will accept the Report's conclusions upholding the prosecutor's challenges against Atkinson and Davis.

As for the other three prospective jurors, the Report notes that courts in the Second Circuit have recognized as valid the reasons put forth by the prosecution for its challenges, such as age, maturity, employment, and demeanor. (Report at 21–24); *see, e.g., United States v. Lawal,* 97 Civ. 1026, 129 F.3d 114 (table), 1997 WL 664794, at *1 (2d Cir. Oct.21, 1997); *Brown,* 973 F.2d at 121; *United States v. Stavroulakis,* 952 F.2d 686, 696 (2d Cir.1992); *Cruz v. Artuz,* 96 Civ. 5209, 1997 WL 269591, at *6 n. 7 (E.D.N.Y. Apr.21, 1997). Because the trial court's findings regarding the exclusion of these three prospective jurors are not clearly erroneous, the Report is correct in concluding that petitioner is not entitled to habeas corpus relief on that basis. (Report at 26.)

Petitioner objects also to the Report's analysis of the trial court's conduct at the third step of the *Batson* inquiry. Petitioner appears to believe that a trial court's duty at the third step is to urge the defense to supplement its effort to carry the burden of persuasion. (*See* Obj. at 3 "( [T]he court cited no ruling or statement by the trial judge urging Jordan to carry his burden of persuasion.")) The New York Court of Appeals has made clear that a trial court's duty at the third step is to determine "whether the opponent of the strike has carried his burden of proving purposeful discrimination." *Payne,* 88 N.Y.2d at 183, 643 N.Y.S.2d at 956, 666 N.E.2d 542. The trial court's sole obligation to the parties is to insure that both have an adequate opportunity to present their respective arguments. *See id.* at 184, 643 N.Y.S.2d at 957, 666 N.E.2d 542. There is no indication in the record that defense counsel was denied an opportunity to rebut the prosecutor's reasons for exercising his peremptory challenges.

## IV.

■ Subsequent to his objections, petitioner filed a motion, dated September 3, 1998, requesting that the court consider evidence that petitioner was incapacitated during his trial due to post-traumatic stress disorder and substance abuse. The documents submitted by petitioner to support these claims were not included in his original petition, nor were these arguments raised in his direct appeals. Petitioner cannot raise for the first time in a motion subsequent to both his objections and his initial petition issues not previously raised. *See, e.g., Grosso v. Artuz,* 97 Civ. 1623, 1998 WL 341935 at *6 (S.D.N.Y. June 19, 1998); *McPherson v. Johnson,* 95 Civ. 9449, 1996 WL 706899 at *2 (S.D.N.Y. Dec.9, 1996); *Jerrel v. Keane,* 93 Civ. 7746, 1995 WL 653369 at *2 (S.D.N.Y. Nov.7, 1995); *Harris v. Pulley,* 885 F.2d 1354, 1377–78 (9th Cir.1988). Accordingly, petitioner's motion is denied as untimely.

\*     \*     \*     \*     \*     \*

For the reasons stated above, I agree with the Report's conclusions that petitioner's first, third and fourth grounds for relief are procedurally barred and that petitioner's *Batson* claim is without merit. Accordingly, the Report is adopted, the writ is denied, and the petition is dismissed. Additionally, petitioner's motion for the consideration of mitigating factors is denied as untimely. In view of the Eastern District cases referred to above, a certificate of appealability will issue.

SO ORDERED.

### REPORT AND RECOMMENDATION

PECK, United States Magistrate Judge.

Petitioner Flanders Jordan seeks a writ of habeas corpus from his conviction of manslaughter in the first degree, for which he was sentenced to eleven to twenty-two years imprisonment. Petitioner Jordan raises four issues in his habeas petition. Three of those issues, however, were raised by Jordan on direct appeal to the First Department but were not adequately raised in his application for leave to appeal to the New York Court of Appeals. Thus, those three grounds are unexhausted and procedurally defaulted in state court, and federal habeas review of those claims is barred. Jordan's remaining habeas claim, that the prosecution excluded prospective black jurors in violation of *Batson v. Kentucky*, lacks merit. Accordingly, for the reasons set forth below, the Court recommends that petitioner Jordan's habeas corpus petition should be denied.

### FACTS

#### Jury Selection and Jordan's Batson Challenge

During jury selection, Jordan's defense counsel (Mr. Kliegerman) made a *Batson* application asserting that, of the prosecution's ten challenges, five had been used to discharge prospective black jurors. (Voir Dire at 43.) The prosecutor (ADA Ginsberg) pointed out that two of those black prospective jurors had been excused for cause. (*Id.* at 45.) The trial court stated that he did not think it "necessary or required at the present time," but nevertheless asked the prosecutor to provide any non-racial grounds for excluding the three other black prospective jurors, Mr. Taylor, Mr. Atkinson and Mrs. Beasley. (*Id.* at 44–45.)

Describing his rational for excusing Mrs. Beasley, ADA Ginsberg stated:

> She's a young woman, she works part-time. When asked what she did the rest of the time, she watches TV, lives with her mother and has a brother in jail. She didn't seem to me to have the kind of maturity or life experience that would make her a good juror to sit on this particular case.

(*Id.* at 45–46.) As for Mr. Atkinson, ADA Ginsberg stated:

> He's the one who said he had a brother who was arrested in the Bronx and the police beat him up unfairly, as far as he knew, the police acted unfairly. There is a great number of police going to testify and although he said it wouldn't affect him, I don't want that kind of juror.

(*Id.* at 46.) The prosecutor's stated reason for excusing Mr. Taylor was that "he was relatively young, worked as a computer operator who didn't have any supervisory-type of role and was single and has no kids and didn't seem to have the kind of life experience that I prefer in jurors." (*Id.* at 46.)

The trial court denied the defense's *Batson* application, stating that there seemed to be "some rational basis for the exercise of the challenge with regard to the three, Beasley, Atkinson and Taylor, not racially involved." (*Id.* at 46–47.)

Additional jurors were voir dired, and the defense raised an additional challenge to the prosecutor's peremptory challenge of a black potential juror, Mrs. Davis. (*Id.* at 62–63.) The prosecutor explained that he exercised his peremptory challenge because her daughter had resigned from the Police Department under unknown and "mysterious" circumstances and he was concerned because of the number of police witnesses. (*Id.* at 63.) The trial court denied the *Batson* challenge finding there to be a "rational basis," in a case with a "good number of police witnesses that [the prospective juror's] view of the Police Department may have been jaundiced by her daughter's experience." (*Id.* at 63–64.)

In a subsequent round of selection, the prosecutor sought to exclude a black woman, Iris Chatrain, and when the trial court sua sponte asked for a basis, the prosecutor explained:

> She seemed goofy to me. She does not known what her two kids do, live in the area, she doesn't seem to have it all, even though she was on a convicting jury yesterday.

(*Id.* at 130.) The trial judge found there to be a basis for the peremptory challenge, explaining that Mrs. Chatrain was "in her sixties" and "while a very charming woman, she did not appear to be greatly intelligent." (*Id.; see also id.* at 117–19, 123.)

### Jordan's Conviction and Sentencing

On December 20, 1990, petitioner Jordan was convicted of manslaughter. (Trial Tr. at 1557.) Jordan was sentenced, as a second felony offender, to eleven to twenty-two years imprisonment. (1/24/91 Sentencing Tr. at 13.)

### Jordan's Direct Appeals in State Court

On direct appeal to the First Department, Jordan's counsel raised five grounds for appeal: (1) the trial court's denial of Jordan's application for a *Dunaway* hearing violated his due process rights where he was arrested over seven months after the crime and he was not informed that his arrest was made on the basis of an anonymous tip until the eve of the *Wade* hearing, after the filing of his omnibus motion (Ex. B:[1] Jordan 1st Dep't Br., dated July 11, 1997, at 14–18); (2) the *Batson* challenge, that the People violated the Equal Protection Clause where the prosecutor's reasons for exercising peremptory challenges against three prospective black jurors were pretextual and the trial court did not afford defense counsel the opportunity to challenge those reasons (*id.* at 19–25); (3) the trial court's improper comment regarding Jordan's voir dire questions to prospective jurors concerning his right not to testify at trial denied him a fair trial (*id.* at 26–29); (4) the trial court abused its discretion in discharging a sick juror whom Jordan wanted to retain as well as a juror with holiday travel plans, while keeping two other jurors with holiday travel plans (*id.* at 30–37); and (5) the trial court denied Jordan a fair trial when it refused to give his requested accomplice charge to the jury (*id.* at 38–41; *see also* Ex. E: Jordan Reply Br. to 1st Dep't). Jordan also filed a pro se supplemental brief to the First Department, raising claims of alleged ineffective assistance of trial counsel. (Ex. C: Jordan Supp. Br. to 1st Dep't.)

The First Department unanimously affirmed Jordan's conviction on March 11, 1997. *People v. Jordan,* 237 A.D.2d 141, 654 N.Y.S.2d 141 (1st Dep't 1997). As to Jordan's *Batson* claim, the First Department stated, in full:

> We find the record of the voir dire portion of this case, as presented on the appeals, sufficiently complete to determine the *Batson* claims raised by defendants (*People v. Childress,* 81 N.Y.2d 263, 268, 598 N.Y.S.2d 146, 614 N.E.2d 709). The record demonstrates that, even though defendants failed to establish a clear pattern of purposeful discrimination in the first instance, the prosecutor provided nonpretextual race neutral reasons for the use of the peremptory strikes against the jurors, whose dismissals are challenged on appeal by defendants (*see, People v. Payne,* 88 N.Y.2d 172, 181, 643 N.Y.S.2d 949, 666 N.E.2d 542; *cf. People v. Rodriguez,* 211 A.D.2d 275, 627 N.Y.S.2d 614, *appeal dismissed,* 88 N.Y.2d 917, 646 N.Y.S.2d 982, 670 N.E.2d 223), and that defendants had ample opportunity to address the prosecutor's reasons for his use of particular peremptory challenges.

*People v. Jordan,* 237 A.D.2d at 141–42, 654 N.Y.S.2d at 142. The First Department also rejected Jordan's other appeal grounds. *Id.* at 142, 654 N.Y.S.2d 141.

Jordan's counsel sought leave to appeal to the New York Court of Appeals. (*See* Ex. G: Jordan's Counsel's 4/16/97 Letter to Ct.App.) Jordan's counsel's letter stressed the *Batson* issue, starting his letter by saying that "[t]his case presents the Court with an ideal opportunity to clarify the inconsistent application of the United States Supreme Court's opinion in *Batson v. Kentucky* ..." (Ex. G:

---

1. References to "Ex." are to the Appendix of exhibits submitted by the People.

4/16/97 Letter at p. 1.) After discussing the *Batson* issue at length, Jordan's counsel asked for leave to appeal "[f]or all of these reasons and the reasons set forth in his Appellate Division briefs," and noted that "[i]n support of his application, Mr. Jordan relies on this letter and on the briefs he filed in the Appellate Division." (*Id.* at 2.) [2]

The New York Court of Appeals denied leave to appeal on May 8, 1997, without opinion. *People v. Jordan,* 89 N.Y.2d 1095, 660 N.Y.S.2d 389, 682 N.E.2d 990 (1997). **Jordan's Present Federal Habeas Corpus Petition**

Jordan's present federal habeas corpus petition alleges that: (1) his due process rights were violated when his application for a *Dunaway* hearing was denied although he was arrested seven months after the crime and was not informed that his arrest was made on the basis of an anonymous tip until the eve of the *Wade* hearing, after the filing of his omnibus motion (Petition, dated July 11, 1997, ¶ 12(A)); (2) the Equal Protection Clause was violated, and he was denied a fair trial, when the People used their peremptory challenges to exclude prospective black jurors based on race in violation of *Batson* (*id.* ¶ 12(B)); (3) the trial court's improper comments upon voir dire deprived Jordan of a fair trial (*id.* ¶ 12(C)); and (4) the trial court abused its discretion in discharging a sick juror and a juror with holiday travel plans (*id.* ¶ 12(D)).

### ANALYSIS

**I. PETITIONER'S CLAIMS NOT CLEARLY ARTICULATED IN HIS APPLICATION FOR LEAVE OF APPEAL TO THE NEW YORK COURT OF APPEALS ARE NOT EXHAUSTED AND ARE PROCEDURALLY BARRED FOR HABEAS CORPUS REVIEW**

Section 2254 codifies the exhaustion requirement, providing that "[a]n application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that—(A) the applicant has exhausted the remedies available in the courts of the State. . . ." 28 U.S.C. § 2254(b)(1)(A). *See, e.g., Rose v. Lundy,* 455 U.S. 509, 515–16, 102 S.Ct. 1198, 1201, 71 L.Ed.2d 379 (1982) ("The exhaustion doctrine existed long before its codification by Congress in 1948 . . . in 28 U.S.C. § 2254"); *Picard v. Connor,* 404 U.S. 270, 275, 92 S.Ct. 509, 512, 30 L.Ed.2d 438 (1971); *Bossett v. Walker,* 41 F.3d 825, 828 (2d Cir.1994), *cert. denied,* 514 U.S. 1054, 115 S.Ct. 1436, 131 L.Ed.2d 316 (1995); *Pesina v. Johnson,* 913 F.2d 53, 54 (2d Cir.1990); *Daye v. Attorney General,* 696 F.2d 186, 190–94 (2d Cir.1982) (en banc). As the Supreme Court has made clear, "[t]he exhaustion doctrine is principally designed to protect the state courts' role in the enforcement of federal law and prevent disruption of state judicial proceedings." *Rose v. Lundy,* 455 U.S. at 518, 102 S.Ct. at 1203.

The Second Circuit has held that "[e]xhaustion of available state remedies requires presentation of the claim to the highest state court from which a decision can be had." *Daye v. Attorney General,* 696 F.2d at 191 n. 3; *accord, e.g., Bossett v. Walker,* 41 F.3d at 828 ("To fulfill the exhaustion requirement, a petitioner must have presented the substance of his federal claims 'to the highest court of the pertinent state.' "); *Grey v. Hoke,* 933 F.2d 117, 119 (2d Cir.1991) ("a petitioner must present his federal constitutional claims to the highest court of the state before a federal court may consider the merits of the petition"); *Pesina v. Johnson,* 913 F.2d at 54 ("We have held that the exhaustion requirement mandates that federal claims be presented to the highest court of the pertinent state before a federal court may consider the petition," citing *Daye* ); *Bass v. Scully,* No.

---

**2.** Jordan also filed a pro se application for leave to appeal, on or about April 22, 1997. His pro se application, however, also merely referred to the briefs below:

> 4. The basis upon which these points of law rest are effective legal representation, *inter alia.*

> 5. Said questions of law are enumerated in the enclosed brief. . . .

(Jordan Pro Se Aff. in Supp. of Application for Certificate Granting Leave to Appeal, ¶¶ 4–5.)

CV–92–0349, 1995 WL 347040 at *2 (E.D.N.Y. May 25, 1995); *Brooks v. Kelly*, No. 88–CV–0631, 1993 WL 350188 at *3 (W.D.N.Y. Sept.10, 1993); *Thebner v. Miller*, 788 F.Supp. 714, 717 (E.D.N.Y.1992).

Here, Jordan clearly raised his *Batson* claim in his letter seeking leave to appeal to the New York Court of Appeals. (Ex. G.) That claim, therefore, is exhausted.

Jordan only raised his other, non-*Batson* claims indirectly before the New York Court of Appeals. After discussing the *Batson* issue at length, Jordan's counsel asked for leave to appeal "[f]or all of these reasons and the reasons set forth in his Appellate Division briefs," and noted that "[i]n support of his application, Mr. Jordan relies on this letter and on the briefs he filed in the Appellate Division." (Ex. G: Jordan's Counsel's 4/16/97 Letter to Ct.App. at p. 2.)

Reference to Jordan's Appellate Division briefs is not sufficient to have exhausted the claims in the New York Court of Appeals. In *Grey v. Hoke*, 933 F.2d 117 (2d Cir.1991), the petitioner argued one claim in his leave to appeal letter to the New York Court of Appeals, and also attached his Appellate Division briefs, which had raised that issue plus two others. *Id.* at 120. The Second Circuit held that the claims only referred to in his attached briefs were not exhausted:

> Petitioner argues that by attaching his Appellate Division brief to his letter application to the Court of Appeals, he presented that court with an opportunity to rule on his sentencing and prosecutorial mis-

conduct claims. He concedes, however, that his letter application requested that the Court of Appeals review only the search and seizure claim. The letter made no mention of the sentencing and prosecutorial misconduct claims. Under these circumstances, we disagree with petitioner's assertion that the Court of Appeals was presented with his sentencing and prosecutorial misconduct claims.

> The fair import of petitioner's submission to the Court of Appeals, consisting of his brief to the Appellate Division that raised three claims and a letter to the Court of Appeals arguing only one of them, was that the other two had been abandoned. The only possible indication that the other two claims were being pressed was the inclusion of a lengthy brief originally submitted to another court. This did not fairly apprise the court of the two claims. We decline to presume that the New York Court of Appeals has "a duty to look for a needle in a paper haystack." For a federal court to hold that a state court had the opportunity to rule on a constitutional claim as to which no ruling was requested, and then to rule on the merits of the claim itself, would undermine the very considerations of comity that the rules of exhaustion were designed to protect.

*Grey v. Hoke*, 933 F.2d at 120 (citations omitted).[3]

3. *Accord, e.g., Carderas v. Superintendent, Malone Correctional Facility*, No. CV–94–5093, 1996 WL 497138 at *3–4 (E.D.N.Y. Aug.26, 1996) (excessive sentence claim procedurally barred where raised before 2d Dep't but not in application for leave to appeal); *DeLeon v. Hanslmaier*, No. CV–94–5512, 1996 WL 31232 at *3 (E.D.N.Y. Jan.19, 1996) ("The fact that petitioner attached his brief submitted to the Appellate Division [with his application for leave to appeal to the Court of Appeals] is not enough to satisfy the exhaustion requirement."), *aff'd mem.*, 104 F.3d 355 (2d Cir.1996); *Figueroa v. Kelly*, 95 Civ. 0216, 1995 WL 702327 at *2 (S.D.N.Y. Nov.29, 1995) ("If a petitioner limits the issues to be reviewed in a letter application to the New York Court of Appeals, the other claims presented in his or her Appellate Division brief are not deemed exhausted under the *Lundy* requirement. . . . [but] should be deemed procedurally forfeited for purposes of

federal habeas review where the petitioner is now procedurally barred from presenting those claims to the state court."); *McGann v. Kelly*, 891 F.Supp. 128, 134 (S.D.N.Y.1995) ("By failing to raise his ineffective assistance of counsel claim in his leave application, petitioner did not fairly apprise the [N.Y.] Court of Appeals of the factual and legal premises underlying his claim."); *Bass v. Scully*, 1995 WL 347040 at *3; *Lynes v. Mitchell*, 894 F.Supp. 119, 123 (S.D.N.Y.1995), *aff'd mem.*, 104 F.3d 355 (2d Cir.1996); *Morales v. Keane*, No. CV–94–2379, 1995 WL 235222 at *13 n. 9 (E.D.N.Y. April 13, 1995); *Smith v. Keane*, No. CV–94–0514, 1995 WL 87330 at *2 (E.D.N.Y. Feb.10, 1995); *Esquilin v. Walker*, No. CV–91–4608, 1992 WL 151903 at *2 (E.D.N.Y. June 16, 1992), *aff'd mem.*, 990 F.2d 624 (2d Cir.1993); *Cornielle v. Riley*, No. CV–92–1018, 1992 WL 142009 at *2 (E.D.N.Y. June 16, 1992).

The district court decisions within the Circuit have extended *Grey*'s rule to situations, like Jordan's, where the application for leave to appeal to the New York Court of Appeals refers to the Appellate Division briefs. For example, in *Brooks v. Kelly*, No. 88–CV–0631, 1993 WL 350188 (W.D.N.Y. Sept.10, 1993), petitioner's application for leave to appeal stated that " 'other significant issues also are presented which are thoroughly articulated in' " petitioner's Appellate Division briefs, which were attached. *Id.* at *2. The District Court held that the claim was not exhausted:

> For a federal claim to be considered exhausted, it must have been presented to the highest state court. A petitioner is not deemed to have presented a claim to the New York State Court of Appeals simply by attaching an Appellate Division brief without further elaboration of the claim in the petition for leave to appeal. [Citing *Grey v. Hoke*.] Further, *a petitioner has not fulfilled the exhaustion requirement by having made in the application for leave to appeal general reference to claims in the attached appellate brief meriting review.*

*Brooks v. Kelly*, 1993 WL 350188 at *3 (citations omitted & emphasis added).

Similarly, in *Thebner v. Miller*, 788 F.Supp. 714 (E.D.N.Y.1992), the petitioner raised one claim in detail in his application for leave to appeal to the New York Court of Appeals, and included the additional sentence that " '[n]umerous other issues are raised in defendant-appellant's brief all of which deserve review by this court.' " *Id.* at 717. The District Court held that petitioner's "inclusion in his application to the Court of Appeals of a single sentence which refers, in a general way, to the various claims raised in his sixty-seven page brief to the Appellate Division, is insufficient to fairly apprise the Court of Appeals of the factual and legal issues in those claims." *Id.* at 717 (citing *Grey* ); *see also Ojeda v. Artuz*, 96 Civ. 5900, 1997 WL 283398 at *3 (S.D.N.Y. May 29, 1997); *Morrison v. McClellan*, 903 F.Supp. 428, 430 (E.D.N.Y.1995); *Marrero v. Keane*, 93 Civ. 3573, 1995 WL 66660 at *1 (S.D.N.Y. Feb.16, 1995) (reference to "Points I and II" of Appellate Division brief not sufficient under *Grey*; "Presentation requires more than a 'general reference' to the issues presented in an attached brief.") (citing *Grey v. Hoke, Brooks v. Kelly* and *Thebner v. Miller* ).[4]

Thus, under *Grey* and its progeny, Jordan's reference in his leave to appeal application to his Appellate Division briefs is not sufficient, and all of his claims except his *Batson* claim are not exhausted.

Jordan, however, is procedurally barred from raising these claims in the New York

---

4. *But cf. Spence v. Superintendent, Great Meadow Correctional Facility*, 987 F.Supp. 151, 161 (E.D.N.Y.1997) (distinguishes *Grey* as case where leave to appeal letter "reflect[ed] an abandonment of" the legal claims not directly raised in that letter); *Manning v. Artuz*, No. 94–CV–3325, 1996 WL 294359 at *3–4 (E.D.N.Y. May 29, 1996) (distinguishes *Grey* because the "fair import" of letter application's reference to Appellate Division briefs was "that Petitioner was requesting the New York Court of Appeals to review the same claims that were advanced in the Appellate Division."); *Meatley v. Artuz*, 886 F.Supp. 1009, 1013–14 (E.D.N.Y.1995) (where no specific claim raised in letter to N.Y. Court of Appeals and Appellate Division briefs were attached to the letter, claims raised in bold headings in those briefs deemed exhausted); *Melendez v. Scully*, No. CV–91–2497, 1993 WL 41769 at *4 (E.D.N.Y. Feb.10, 1993) (distinguishes *Grey* as case of abandonment of claim while Melendez's counsel's leave to appeal letter argued one issue and also stated that he relied on the attached Appellate Division briefs as to other issues).

The Court is not persuaded by these cases. *Grey*'s result should not change merely because the Appellate Division briefs are not only attached to the application for leave to appeal to the New York Court of Appeals but are referred to in that application. To preserve an issue for federal habeas review, the petitioner must present it in the application for leave to appeal to the New York Court of Appeals. Discussion of why appeal should be granted on one issue, and then a passing reference to other issues in enclosed briefs, does not fairly apprise the New York Court of Appeals of the claims to be reviewed. To hold otherwise would require the Court of Appeals to read through lengthy briefs in search of issues deserving of review. In other words, such a holding would create "a duty to look for a needle in a paper haystack." The Court therefore believes the *Brooks v. Kelly, Thebner v. Miller* and *Marrero v. Keane* line of cases cited in text above better reflect the Second Circuit's *Grey* decision.

Court of Appeals. As the Second Circuit explained in *Grey v. Hoke:*

> Here, New York procedural rules plainly bar petitioner from attempting to raise [the claims he raised before the Appellate Division but not in his application for leave to appeal] before the New York Court of Appeals. Petitioner cannot again seek leave to appeal these claims in the Court of Appeals because he has already made the one request for leave to appeal to which he is entitled. *See* N.Y. Court Rules § 500.10(a). Collateral review of these claims is also barred because the issues were previously determined on the merits on direct appeal. *See* N.Y.Crim. Proc. Law § 440.10(2)(a); *see also* N.Y.Crim. Proc. Law § 440.10(2)(c) (barring review if a claim could have been raised on direct review) . . . .

> We agree with the state, however, that petitioner's forfeiture in state court of [the claims not adequately raised before the N.Y. Court of Appeals] bars him from litigating the merits of those claims in federal habeas proceedings, absent a showing of cause for the procedural default and prejudice resulting therefrom. *Murray v. Carrier*, 477 U.S. 478, 492, 106 S.Ct. 2639, 2647, 91 L.Ed.2d 397 (1986); *Wainwright v. Sykes*, 433 U.S. 72, 87–91, 97 S.Ct. 2497, 2506–2509, 53 L.Ed.2d 594 (1977). Petitioner makes no showing of cause or of prejudice. The [claims not raised before the Court of Appeals] must therefore be dismissed without reaching the merits.

*Grey v. Hoke*, 933 F.2d at 120–21; *accord, e.g., Bass v. Scully*, 1995 WL 347040 at *3; *Marrero v. Keane*, 1995 WL 66660 at *2; *Brooks v. Kelly*, 1993 WL 350188 at *3; *Thebner v. Miller*, 788 F.Supp. at 717–18; *see also, e.g., Bossett v. Walker*, 41 F.3d at 828–29. As modified and clarified by more recent Supreme Court case law, to avoid a procedural default, a habeas petitioner must " 'demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice,' " *i.e.,* a showing of "actual innocence." *Gibriano v. Attorney General*, 965 F.Supp. 489, 493 n. 5 (S.D.N.Y.1997) (Sprizzo, D.J. & Peck, M.J.)

(quoting *Ellman v. Davis*, 42 F.3d 144, 147 (2d Cir.1994) (quoting *Coleman v. Thompson*, 501 U.S. 722, 750, 111 S.Ct. 2546, 2564, 115 L.Ed.2d 640 (1991)), *cert. denied*, 515 U.S. 1118, 115 S.Ct. 2269, 132 L.Ed.2d 275 (1995)); *see also, e.g., Lebron v. Mann*, 40 F.3d 561, 564 (2d Cir.1994).

Here, Jordan has not alleged cause and prejudice nor has he made a showing of actual innocence. Thus, his non-*Batson* habeas claims should be dismissed as procedurally defaulted.

## II. JORDAN'S BATSON CLAIM SHOULD BE DENIED BECAUSE THE PROSECUTOR'S USE OF PEREMPTORY CHALLENGES DID NOT VIOLATE THE EQUAL PROTECTION CLAUSE

In *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), the Supreme Court reaffirmed that a state's purposeful exclusion of jurors based on race violates the Equal Protection Clause of the Constitution. *Id.* at 84, 106 S.Ct. at 1716. The Supreme Court went on to articulate the standards to be employed to determine when jury selection in a particular criminal case involves purposeful racial discrimination. As in Title VII cases, this involves a burden shifting analysis:

> These principles support our conclusion that a defendant may establish a prima facie case of purposeful discrimination in selection of the petit jury solely on evidence concerning the prosecutor's exercise of peremptory challenges at the defendant's trial. **[Step 1:]** To establish such a case, the defendant first must show that he is a member of a cognizable racial group and that the prosecutor has exercised peremptory challenges to remove from the venire members of the defendant's race. Second, the defendant is entitled to rely on the fact, as to which there can be no dispute, that peremptory challenges constitute a jury selection practice that permits "those to discriminate who are of a mind to discriminate." Finally, the defendant must show that these facts and any other relevant circumstances raise an inference that the prosecutor used that practice to

exclude the veniremen from the petit jury on account of their race. This combination of factors in the empaneling of the petit jury, as in the selection of the venire, raises the necessary inference of purposeful discrimination.

In deciding whether the defendant has made the requisite showing, the trial court should consider all relevant circumstances. For example, a "pattern" of strikes against black jurors included in the particular venire might give rise to an inference of discrimination. Similarly, the prosecutor's questions and statements during voir dire examination and in exercising his challenges may support or refute an inference of discriminatory purpose. These examples are merely illustrative. We have confidence that trial judges, experienced in supervising voir dire, will be able to decide if the circumstances concerning the prosecutor's use of peremptory challenges creates a prima facie case of discrimination against black jurors.

[Step 2:] *Once the defendant makes a prima facie showing, the burden shifts to the State to come forward with a neutral explanation for challenging black jurors.* Though this requirement imposes a limitation in some cases on the full peremptory character of the historic challenge, *we emphasize that the prosecutor's explanation need not rise to the level justifying exercise of a challenge for cause.* But the prosecutor may not rebut the defendant's prima facie case of discrimination by stating merely that he challenged jurors of the defendant's race on the assumption—or his intuitive judgment—that they would be partial to the defendant because of their shared race. Just as the Equal Protection Clause forbids the States to exclude black persons from the venire on the assumption that blacks as a group are unqualified to serve as jurors, so it forbids the States to strike black veniremen on the assumption that they will be biased in a particular case simply because the defendant is black. The core guarantee of equal protection, ensuring citizens that their State will not discriminate on account of race, would be meaningless were we to approve the exclusion of jurors on the basis of such assump-

tions, which arise solely from the jurors' race. Nor may the prosecutor rebut the defendant's case merely by denying that he had a discriminatory motive or "affirm[ing][his] good faith in making individual selections." If these general assertions were accepted as rebutting a defendant's prima facie case, the Equal Protection Clause "would be but a vain and illusory requirement." *The prosecutor therefore must articulate a neutral explanation related to the particular case to be tried.* [Step 3:] The trial court then will have the duty to determine if the defendant has established purposeful discrimination.

*Batson v. Kentucky,* 476 U.S. at 96–98, 106 S.Ct. at 1723–24 (citations & fns. omitted, emphasis added); *accord, e.g., Purkett v. Elem,* 514 U.S. 765, 767, 115 S.Ct. 1769, 1770–71, 131 L.Ed.2d 834 (1995); *Hernandez v. New York,* 500 U.S. 352, 358–59, 111 S.Ct. 1859, 1865–66, 114 L.Ed.2d 395 (1991); *People v. Payne,* 88 N.Y.2d 172, 181, 643 N.Y.S.2d 949, 955, 666 N.E.2d 542 (1996). In a footnote in *Batson,* the Supreme Court emphasized the deference to be accorded to the trial judge's determination: "Since the trial judge's findings in the context under consideration here largely will turn on evaluation of credibility, a reviewing court ordinarily should give those findings great deference." *Batson v. Kentucky,* 476 U.S. at 98 n. 21, 106 S.Ct. at 1724 n. 21.

Here, the state trial court did not determine whether Jordan had made out a prima facie case, but nevertheless asked the prosecutor to provide a race neutral explanation for his peremptory challenges of prospective black jurors. (Voir Dire at 44–45.) This Court also will assume, without deciding, that Jordan established a prima facie case sufficient to shift the burden to the prosecutor to provide racially neutral explanations for its peremptory strikes. *See, e.g., Hernandez v. New York,* 500 U.S. at 359, 111 S.Ct. at 1866 ("Once a prosecutor has offered a race-neutral explanation for the peremptory challenges and the trial court has ruled on the ultimate question of intentional discrimination, the preliminary issue of whether the defendant had made a prima facie showing

becomes moot."); *United States v. Davis*, 871 F.2d 71, 72 (8th Cir.1989).

The second step of the *Batson* analysis—that the prosecutor come forward with a race-neutral explanation for its peremptory challenge—"does not demand an explanation that is persuasive, or even plausible. 'At this [second] step of the inquiry, the issue is the facial validity of the prosecutor's explanation. Unless a discriminatory intent is inherent in the prosecutor's explanation, the reason offered will be deemed race neutral.' " *Purkett v. Elem*, 514 U.S. at 768, 115 S.Ct. at 1771; *see also, e.g., People v. Payne*, 88 N.Y.2d at 183, 643 N.Y.S.2d at 956, 666 N.E.2d 542. The Supreme Court clarified that:

It is not until the third step that the persuasiveness of the justification becomes relevant—the step in which the trial court determines whether the opponent of the strike has carried his burden of proving purposeful discrimination. At that stage, implausible or fantastic justifications may (and probably will) be found to be pretexts for purposeful discrimination. But to say that a trial judge may choose to disbelieve a silly or superstitious reason at step 3 is quite different from saying that a trial judge must terminate the inquiry at step 2 when the race-neutral reason is silly or superstitious. The latter violates the principle that the ultimate burden of persuasion regarding racial motivation rests with, and never shifts from, the opponent of the strike.

The Court of Appeals appears to have seized on our admonition in *Batson* that to rebut a prima facie case, the proponent of a strike "must give a 'clear and reasonably specific' explanation of his 'legitimate reasons' for exercising the challenges" and that the reason must be "related to the particular case to be tried." This warning was meant to refute the notion that a prosecutor could satisfy his burden of production by merely denying that he had a discriminatory motive or by merely affirming his good faith. What it means by a "legitimate reason" is not a reason that makes sense, but a reason that does not deny equal protection.

*Purkett v. Elem*, 514 U.S. at 768–69, 115 S.Ct. at 1771 (citations omitted); *see also, e.g., People v. Payne*, 88 N.Y.2d at 183, 643 N.Y.S.2d at 956, 666 N.E.2d 542.

Here, the reasoning offered by the prosecutor for each of his peremptory challenges of prospective black jurors is facially valid, *i.e.*, a discriminatory intent is not inherent in the asserted reasons.

Since the prosecutor offered a facially neutral explanation, thus satisfying the second *Batson* step, the Court will now review the trial court's determination as to whether Jordan proved purposeful racial discrimination at the third *Batson* step. The Court reiterates that on habeas review, it must give "great deference" to the trial court's findings as to the third *Batson* step. *See, e.g.*, 28 U.S.C. § 2254(d)(2); *Purkett v. Elem*, 514 U.S. at 769, 115 S.Ct. at 1771; *Hernandez v. New York*, 500 U.S. at 364–65, 111 S.Ct. at 1868–69; *Batson v. Kentucky*, 476 U.S. at 98 n. 21, 106 S.Ct. at 1724, n. 21; *Bryant v. Speckard*, 131 F.3d 1076, 1077 (2d Cir.1997) ("A state court's determination whether a prosecutor's use of a peremptory challenge was motivated by discriminatory intent, in violation of *Batson*, is a factual determination and thus qualifies for [§ 2254(d)'s] presumption of correctness."), *cert. pet. filed*, No. 97–8511 (Mar. 30, 1998); *Brown v. Kelly*, 973 F.2d 116, 120, 122 (2d Cir.1992) (the trial court's "decision on the factual question of discriminatory animus, largely based on determinations of credibility, is ordinarily given 'great deference' on appeal" and habeas review), *cert. denied*, 506 U.S. 1084, 113 S.Ct. 1060, 122 L.Ed.2d 366 (1993); *United States v. Alvarado*, 951 F.2d 22, 25 (2d Cir.1991) ("As we have recognized, the task of assessing the prosecutor's explanations, in order to determine the ultimate issue of whether discrimination has been shown, falls primarily upon the judicial officer conducting the jury selection, whose determinations as to credibility of the proffered explanations are entitled to 'appropriate deference.' "); *United States v. Davis*, 871 F.2d at 73.

■ The prosecutor explained his peremptory challenge of Mr. Atkinson as based on Atkinson's belief that his brother had been

unfairly assaulted by the police,[5] and of Mrs. Davis because her daughter resigned from the police department under "mysterious" circumstances. (Voir Dire at 46, 62–63.) Negative experience with law enforcement has been found to constitute a race-neutral factor for peremptorily challenging a juror. *See, e.g., United States v. Rudas*, 905 F.2d 38, 41 (2d Cir.1990); *see also, e.g., United States v. Carter*, 111 F.3d 509, 511–12 (7th Cir.1997); *United States v. Gibson*, 105 F.3d 1229, 1232 (8th Cir.1997); *United States v. Brooks*, 2 F.3d 838, 841 (8th Cir.1993), *cert. denied*, 510 U.S. 1137, 114 S.Ct. 1117, 127 L.Ed.2d 427 (1994); *Reynolds v. Benefield*, 931 F.2d 506, 511–512 (8th Cir.), *cert. denied*, 501 U.S. 1204, 111 S.Ct. 2795, 115 L.Ed.2d 969 (1991); *United States v. Franklyn*, 96 CR. 1062, 1997 WL 334969 at *5 (S.D.N.Y. June 16, 1997). While the negative experience at issue here was not that of the potential jurors but of their family members, the Court finds this to be a reasonable extension of this principle, much like a family member's criminal history is accepted as a race neutral explanation. *See, e.g., United States v. Lawal*, No. 97–1026, 129 F.3d 114 (table), 1997 WL 664794 at *1 (2d Cir. Oct.21, 1997) (challenges "on the basis of family criminal histories ... are well-accepted, facially race-neutral reasons"); *United States v. Wiggins*, 104 F.3d 174, 176 (8th Cir.1997) ("this court has held that 'the incarceration of a close family member is a legitimate race-neutral reason justifying the use of a "peremptory"

strike' " "); *United States v. Mathis*, 96 F.3d 1577, 1582 (11th Cir.1996) ("The record shows that [the potential juror], who is Hispanic, was removed because a close family member of hers had had a cocaine conviction. There was no clear error in allowing the strike ..."), *cert. denied*, —— U.S. ——, 117 S.Ct. 1699, 137 L.Ed.2d 825 (1997); *United States v. Valenzuela*, No. 92–50541, 17 F.3d 397 (table), 1994 WL 55509 at *2 (9th Cir. Feb.24, 1994) ("challenges based on a family member's negative experience with law enforcement have been upheld under *Batson*."), *cert. denied*, 513 U.S. 907, 115 S.Ct. 275, 130 L.Ed.2d 192 (1994); *United States v. Casper*, 956 F.2d 416, 419 (3d Cir.1992); *United States v. Johnson*, 941 F.2d 1102, 1109 n. 4 (10th Cir.1991); *United States v. Forbes*, 816 F.2d 1006, 1010 (5th Cir.1987); *United States v. Franklyn*, 1997 WL 334969 at *5–6. Given the standard of deference that is to be accorded to trial courts under *Batson* on federal habeas review, the prosecutor's explanation concerning Mr. Atkinson and Mrs. Davis is sufficient to support the trial court's race-neutrality decision.

In challenging Mr. Taylor and Mrs. Beasley, the prosecutor stated that these jurors did not have "the kind of maturity or life experience" he preferred for this type of case. (Voir Dire at 46.) The prosecutor also cited Beasley and Taylor's age and type of employment as reasons for his peremptory challenges. (*Id.*)[6] Courts have found age,

---

5. In state court, Jordan's counsel stated that the People's exclusion of Mr. Atkinson "is not challenged here as pretextual." (Ex. B: Jordan 1st Dep't Br. at 22 n.4.)

6. "One of the significant factors to be considered in determining whether a race-neutral explanation is non-pretextual is whether it has been applied consistently to all prospective jurors, whether or not they are members of the protected group." *People v. Rodriguez*. 211 A.D.2d 275, 279–80, 627 N.Y.S.2d 614, 617–18 (1st Dep't 1995), *appeal dismissed*, 88 N.Y.2d 917, 646 N.Y.S.2d 982, 670 N.E.2d 223 (1996); *see also, e.g., United States v. Alvarado*, 951 F.2d 22, 25 (2d Cir.1991) ("Decisions in other circuits have observed that an explanation for a peremptory challenge, though weakened, is not automatically to be rejected simply because it applies to a non-minority venire-person who was not challenged."); *Reynolds v. Benefield*, 931 F.2d at 512; *United States v. Alvarado*, 923 F.2d 253, 256 (2d Cir.1991) ("The relative plausibility or implausi-

bility of each explanation for a particular challenge, assessed in light of the prosecution's acceptance of jurors with similar circumstances, may strengthen or weaken the assessment of the prosecution's explanation as to other challenges and thereby assist the fact-finder in determining overall intent."); *Roman v. Abrams*, 822 F.2d 214, 228 (2d Cir.1987) (upholds district court's finding that prosecutor's reasons for striking jurors were pretextual where, *inter alia*, only exercised against white jurors with that characteristic), *cert. denied*, 489 U.S. 1052, 109 S.Ct. 1311, 103 L.Ed.2d 580 (1989). Jordan argued in state court that a white potential juror with characteristics similar to excused black juror Mrs. Beasley was allowed to be a juror. (*See* Ex. B: Jordan 1st Dep't Br. at 24.) However, because Jordan's counsel did not raise this issue before the trial judge, the prosecutor did not have an opportunity to explain why he allowed the white juror to serve while excusing the allegedly similar black juror.

life experience and type of employment to be acceptable race-neutral criteria for peremptory challenges. *See, e.g., United States v. Lawal,* 1997 WL 664794 at *1 ("age and demeanor ... are well-accepted, facially race-neutral reasons" for peremptory challenges); *Mourning v. Brown Lincoln–Mercury, Inc.,* No. 96–1171, 125 F.3d 848 (table), 1997 WL 626543 at *3 (4th Cir. Oct.10, 1997) (challenge based on type of employment found race-neutral); *United States v. Hunter,* 86 F.3d 679, 683 (7th Cir.) (challenge based on prospective juror's youth and unstable employment history acceptable), *cert. denied,* —— U.S. ——, 117 S.Ct. 443, 136 L.Ed.2d 339 (1996); *United States v. Stavroulakis,* 952 F.2d 686, 696 (2d Cir.) (upholding peremptory challenge based upon employment history), *cert. denied,* 504 U.S. 926, 112 S.Ct. 1982, 118 L.Ed.2d 580 (1992); *United States v. Alvarado,* 951 F.2d 22, 24–25 (2d Cir.1991) (age, life experience and job); *United States v. Johnson,* 941 F.2d at 1109–10 (exclusion of jurors who are lawyers permissible, race-neutral basis); *United States v. Davis,* 871 F.2d at 72–73 (challenge for age and type of job acceptable); *Cruz v. Artuz,* No. CV 96–5209, 1997 WL 269591 at *6 n. 7 (E.D.N.Y. April 21, 1997) ("courts have generally upheld challenges based on employment as nondiscriminatory and plausible") (citing, *inter alia, United States v. Biaggi,* 853 F.2d 89, 96 (2d Cir.1988), *cert. denied,* 489 U.S. 1052, 109 S.Ct. 1312, 103 L.Ed.2d 581 (1989)), *aff'd mem.,* 133 F.3d 906 (1997); *United States v. Franklyn,* 1997 WL 334969 at *4 (exclusion based on employment as attorney); *United States v. Santopietro,* 809 F.Supp. 1016, 1020 (D.Conn.1992) (upholding exclusions based upon "age, education, employment status").[7]

Later in the voir dire the prosecutor used a peremptory challenge for Mrs. Iris Chatrain. (Voir Dire at 130.) Although defense counsel did not object to the challenge at trial, the trial court noted that Mrs. Chatrain was a black woman and asked for a reason. (*Id.*) The prosecutor stated, "[s]he seemed goofy to me. She does not know what her two kids do, live in the area, she doesn't seem to have it all." (*Id.*) The trial judge, accepting this reasoning, responded that "she did indicate lack of contact with members of her family, and I wa[s] struck that while a very charming woman, she did not appear to be greatly intelligent." (*Id.*) The Second Circuit has accepted demeanor as a valid, race-neutral basis for a peremptory challenge:

> An impression of the conduct and demeanor of a prospective juror during the voir dire may provide a legitimate basis for the exercise of a peremptory challenge. The fact that a prosecutor's explanations in the face of a *Batson* inquiry are founded on these impressions does not make them unacceptable if they are sufficiently specific to provide a basis upon which to evaluate their legitimacy.

*Brown v. Kelly,* 973 F.2d at 121 (upholding peremptory challenges based on prosecutor's perception of one juror's "timidity" and "nervousness," another juror's "flippant" answers and flirtatious manner with defense counsel, and a third juror's hostility and unresponsiveness); *see also, e.g., Bryant v. Speckard,* 131 F.3d at 1077–78 (upholding peremptory challenges based on juror's "discomfort and apprehension"); *United States v. Gibson,* 105 F.3d at 1232 (upholding peremptory challenge of juror who appeared uninterested in the proceedings); *United States v. Hinton,* 94 F.3d 396, 397 (7th Cir.1996) ("Body lan-

**7.** Jordan cites to *People v. McMichael,* 218 A.D.2d 671, 671, 630 N.Y.S.2d 360, 361 (2d Dep't 1995), in which the state intermediate appellate court found the prosecutor's concerns about age, employment status and marital status to be pretextual in light of the prosecutor's inability to relate those factors to the facts of the case. (Ex. B: Jordan 1st Dep't Br. at 23–24.) The *McMichael* court cited to the *Batson* requirement that the prosecutor "must articulate a neutral explanation related to the particular case to be tried." *Batson v. Kentucky,* 476 U.S. at 98, 106 S.Ct. at 1724; *People v. McMichael,* 218 A.D.2d at 671–72, 630 N.Y.S.2d at 361. Jordan's

trial court here made a factual finding that the prosecutor's stated reasons of age and type of employment were acceptable neutral criteria for his peremptory challenges of Mrs. Beasley and Mr. Taylor. (Voir Dire at 46.) Since federal courts in other cases have found the factors of age and type of employment to be neutral criteria for peremptory challenges without an explicit explanation of how those factors relate to the particular case, *see* cases cited in text above, we cannot say that the trial court's finding here was erroneous, despite the Appellate Division's contrary decision in *People v. McMichael.*

guage has long been used as a basis for peremptory challenges.... The 'science' of choosing jurors often depends on the intuitive senses of the attorneys, and the non-discriminatory exercise of that intuition has been long upheld by the courts."); *McCrory v. Henderson*, 82 F.3d 1243, 1247–48 (2d Cir.1996) (Peremptory challenge "decisions may legitimately be based not only on answers given by the prospective juror to questions posed on voir dire, but also on the prosecutor's observations of the prospective juror."); *United States v. Casper*, 956 F.2d at 418–19 (prosecutor's evaluation of juror's "credibility and demeanor"); *United States v. Rudas*, 905 F.2d at 41 (juror's inattentiveness); *United States v. Ruiz*, 894 F.2d 501, 506 (2d Cir.1990) (juror making " 'facial expressions' " suggesting " 'that she really did not want to sit,' " "staring strangely," and not being " 'particularly articulate' "; another juror " 'didn't seem to have the strength of his convictions' " and seemed " 'to be shaking his head at inappropriate times' "); *United States v. Biaggi*, 853 F.2d 89, 96 (2d Cir.1988) (upholding challenge of jurors "display[ing] angry, arrogant, or flippant demeanors"), *cert. denied*, 489 U.S. 1052, 109 S.Ct. 1312, 103 L.Ed.2d 581 (1989); *United States v. Forbes*, 816 F.2d at 1010 (prosecutor sensed by juror's "posture and demeanor that she was hostile to being in court").

The Court recognizes that a reason found to be race-neutral in one case can be a pretext for discrimination in another. *See, e.g., Minetos v. City Univ. of New York*, 925 F.Supp. 177, 184–85 (S.D.N.Y.1996) (Motley, D.J.) (after discussing which grounds have withstood *Batson* challenges, notes that "listing in this manner has the unfortunate effect of creating a how-to guide for defeating *Batson* challenges. Such guidelines do not ensure that juror strikes are not racially motivated—only that advocates are on notice of which reasons will best survive judicial review." Judge Motley therefore "call[ed] for an end to peremptory challenges and the racial discrimination they perpetuate."). The burden, however, is on the person making the *Batson* challenge—here, Jordan—to show discrimination. Jordan did not do so. Indeed, the focus of Jordan's *Batson* state court appeal was that the trial judge "im-

properly deprived Mr. Jordan and his codefendant their opportunity to carry their burden of persuasion at the third-step...." (Ex. B: Jordan 1st Dep't Br. at 21–23.) Jordan's brief did not cite to any ruling or statement by the trial judge preventing Jordan from making a *Batson* record, and this Court's review of the voir dire transcript found no ruling depriving Jordan of making a *Batson* record. The burden was on Jordan and he failed to carry it. " '[W]here the opponent of the peremptory strikes makes no attempt to demonstrate pretext,' facially neutral reasons for exercising peremptory strikes will be upheld." *United States v. Gibson*, 105 F.3d at 1232.

The trial court here found there to be a race-neutral basis for all of the prosecutor's peremptory challenges of black prospective jurors. (Voir Dire at 46–47, 63–64, 130.) The trial judge, of course, had the opportunity to view the prosecutor's demeanor and determine his credibility. On habeas corpus review, we give the trial court's *Batson*-related findings "great deference." The Court cannot say that, under that standard, Jordan is entitled to habeas corpus relief.

### CONCLUSION

For the reasons set forth above, I recommend that the Court deny Jordan's petition for a writ of habeas corpus.

### FILING OF OBJECTIONS TO THIS REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have ten (10) days from receipt of this Report to file written objections. *See also* Fed.R.Civ.P. 6. Such objections (and any responses to objections) shall be filed with the Clerk of the Court, with courtesy copies delivered to the chambers of the Honorable Michael B. Mukasey, 500 Pearl Street, Room 2240, and to the chambers of the undersigned, 500 Pearl Street, Room 1370. Any requests for an extension of time for filing objections must be directed to Judge Mukasey. Failure to file objections will result in a waiver of those objections for purposes of appeal. *Thomas v. Arn*, 474 U.S. 140, 106 S.Ct. 466, 88

L.Ed.2d 435 (1985); *IUE AFL–CIO Pension Fund v. Herrmann*, 9 F.3d 1049, 1054 (2d Cir.1993), *cert. denied*, 513 U.S. 822, 115 S.Ct. 86, 130 L.Ed.2d 38 (1994); *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir.1993); *Frank v. Johnson*, 968 F.2d 298, 300 (2d Cir.), *cert. denied*, 506 U.S. 1038, 113 S.Ct. 825, 121 L.Ed.2d 696 (1992); *Small v. Secretary of Health & Human Servs.*, 892 F.2d 15, 16 (2d Cir.1989); *Wesolek v. Canadair Ltd.*, 838 F.2d 55, 57–59 (2d Cir.1988); *McCarthy v. Manson*, 714 F.2d 234, 237–38 (2d Cir.1983); 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 72, 6(a), 6(e).